1  Erica A. Maharg (Bar No. 279396)
2  SAN FRANCISCO BAYKEEPER
   1736 Franklin Street, Suite 800
3  Oakland, California 94612
   Telephone: (510) 735-9700
4  Facsimile: (510) 735-9160
   Email: erica@baykeeper.org
5
6  Attorneys for Plaintiff
   SAN FRANCISCO BAYKEEPER
7
8
9                  UNITED STATES DISTRICT COURT
10               NORTHERN DISTRICT OF CALIFORNIA
11                       SAN JOSE DIVISION
12

13  SAN FRANCISCO BAYKEEPER, a non-profit          Civil No.
    corporation,
14
15                  Plaintiff,                       COMPLAINT FOR DECLARATORY AND
                                                     INJUNCTIVE RELIEF AND CIVIL
16          v.                                       PENALTIES

17  INTERNATIONAL DISPOSAL CORP. OF                  (Federal Water Pollution Control Act, 33
    CALIFORNIA; and BROWNING-FERRIS                  U.S.C. § 1251 *et seq.*)
18  INDUSTRIES OF CALIFORNIA, INC.,

19                  Defendants.
20
21
22
23
24
25
26
27
28

COMPLAINT

Plaintiff San Francisco Baykeeper ("Baykeeper"), by and through its counsel, alleges as follows:

## INTRODUCTION

1.      This is a citizen suit, brought pursuant to section 505(a)(1) of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a)(1), to address violations of the CWA by Defendant International Disposal Corp. of California and Browning-Ferris Industries of California, Inc. (collectively "Defendant") arising out of operations at the Newby Island Resource Recovery Park, a landfill, compost facility, and material recovery facility located at 1601 Dixon Landing Road, Milpitas, California ("Facility"). Since on or before July 1, 2011, Defendant has been discharging and continues to discharge polluted stormwater from the Facility, in violation of the express terms and conditions of Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1342.  Since on or before July 1, 2011, Defendant has also violated the General Industrial Stormwater Permit issued by the State of California, NPDES General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Permit") and Order No. 2014-0057-DWQ ("2015 Permit") (collectively, the "Industrial Stormwater Permit").  Baykeeper seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees, for Defendant's repeated and ongoing violations of the Clean Water Act.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), 28 U.S.C. § 1331 (an action arising under the laws of the United States), and 28 U.S.C. § 2201 (declaratory relief).

3.      On July 1, 2016, Baykeeper provided notice of intent to file suit against Defendant for Defendant's CWA violations ("Notice Letter") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board")

(collectively, "state and federal agencies"), and Defendant, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A).  A copy of the Notice Letter is attached as Exhibit 1.

4.       More than sixty (60) days have passed since the Notice Letter was mailed to Defendant and the state and federal agencies.  Neither EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint.  No claim in this action is barred by any prior administrative action pursuant to section 309(g) of the CWA, 33 U.S.C. § 1319(g).

5.       Venue is proper in the Northern District of California pursuant to section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

### INTRADISTRICT ASSIGNMENT

6.       Intradistrict assignment of this matter to the San Jose Division of the Court is appropriate pursuant to Civil Local Rule 3-2(e).  The events or omissions which give rise to Baykeeper's claims occurred in Santa Clara County, which is under the jurisdiction of the San Jose Division of the Northern District of California.

### PARTIES

7.       Plaintiff Baykeeper is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Oakland, California.  Baykeeper's approximately 1,500 members live and/or recreate in and around the San Francisco Bay area.  Baykeeper is dedicated to protecting the water quality of San Francisco Bay for the benefit of its ecosystems and communities. To further these goals, Baykeeper actively seeks federal and state agency implementation of the CWA, and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

8.       Members of Baykeeper, including citizens, taxpayers, property owners, and residents, live, work, and travel near, and recreate in, San Francisco Bay and its tributaries, into which Defendant discharges pollutants.  Baykeeper members use and enjoy San Francisco Bay and its tributaries for recreational, educational, scientific, conservation, aesthetic, spiritual, and other purposes.  Defendant's discharges of stormwater containing pollutants impair each of these uses.  Thus, the interests of

Baykeeper's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the CWA and the Industrial Stormwater Permit.

9.    International Disposal Corp. of California operates the Newby Island Landfill, a division of the Newby Island Resource and Recovery Park.  The California Secretary of State's online business portal lists International Disposal Corp. of California as an active California corporation.

10.    Browning Ferris Industries of California, Inc. operates the BFI Newby Island Recyclery, the material recovery facility located within the Newby Island Resource and Recovery Park. The California Secretary of State's online business portal lists Browning-Ferris Industries of California, Inc. as an active California corporation.

## REGULATORY BACKGROUND

### The Problem of Stormwater Pollution

11.    Stormwater runoff is one of the most significant sources of water pollution in the nation and has been recognized as a leading cause of significant and cumulative harmful impacts to the water quality of San Francisco Bay.  With every rainfall event, hundreds of millions of gallons of polluted rainwater flow from local industrial facilities, such as the Facility, and pour into storm drains, local tributaries, and the Bay.  The Regional Board has stated that stormwater pollution is the largest source of pollution entering San Francisco Bay and Bay area surface waters each year.

12.    Stormwater runoff from industrial sites such as the Facility causes harm to humans and aquatic life.  In particular, stormwater can contain heavy metal pollutants such as aluminum, chromium, copper, iron, lead, mercury, nickel, tin, and zinc, as well as high concentrations of suspended solids, and nitrate and nitrite.  Exposure and ingestion of heavy metals can cause health problems in people and aquatic animals, including neurological, physiological, and reproductive effects.  Heavy metals have been shown to alter activity in tissues and blood of fish.

13.    High concentrations of total suspended solids ("TSS") degrade optical water quality by reducing water clarity and decreasing light available to support photosynthesis.  TSS have been shown to alter predator-prey relationships (for example, turbid water might make it difficult for fish to see their prey).  Deposited solids alter habitat for fish, aquatic plants, and benthic organisms.  TSS can also

be harmful to aquatic life because numerous pollutants, including metals and polycyclic aromatic

hydrocarbons ("PAHs"), are adsorbed onto TSS.  Thus, higher concentrations of TSS mean higher

concentrations of toxins associated with those sediments.  Inorganic sediments, including settleable

matter and suspended solids, have been shown to negatively impact species richness, diversity, and

total biomass of filter feeding aquatic organisms on bottom surfaces.

### The Clean Water Act

14.    CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into

waters of the United States unless the discharge is in compliance with various enumerated CWA

sections.  Among other things, CWA section 301(a) prohibits discharges not authorized by, or in

violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued

pursuant to CWA section 402, 33 U.S.C. § 1342.

15.    CWA section 402(b), 33 U.S.C. § 1342(b), allows each state to administer its own

EPA-approved permit program for discharges.  In California, the State Board and its nine Regional

Boards have approval from EPA to administer an NPDES permit program for the State.  The State

Board and Regional Boards issue individual and general NPDES permits regulating water pollutant

discharges from various categories of dischargers.

16.    CWA section 402(p), 33 U.S.C. § 1342(p), requires that NPDES permits be issued for

stormwater discharges "associated with industrial activity."

17.    CWA section 301(b) requires that, by March 31, 1989, all point source dischargers,

including those discharging polluted stormwater, must achieve technology-based effluent limitations

by utilizing the Best Available Technology Economically Achievable ("BAT") for toxic and

nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for

conventional pollutants.  *See* 33 U.S.C. § 1311(b); 40 C.F.R. § 125.3(a)(2)(ii)-(iii).

18.    CWA section 505(a)(1) provides for citizen enforcement actions against any "person,"

including individuals, corporations, or partnerships, for violations of NPDES permit requirements and

for unpermitted discharges of pollutants.  33 U.S.C. § 1365(a)(1); *see* 33 U.S.C. § 1362(5).

19.     CWA section 505(a) authorizes a citizen suit action for injunctive relief.  33 U.S.C. §
1365(a).

20.     CWA violators are subject to an assessment of civil penalties of up to $37,500 per day
per violation for violations occurring between January 12, 2009 and November 2, 2015, and up to
$51,570 per day per violation for violations occurring after November 2, 2015.  33 U.S.C. § 1319(d);
40 C.F.R. §§ 19.1-19.4.

**Water Quality Standards**

21.     Section 303 of the CWA, 33 U.S.C. § 1313, requires states to adopt Water Quality
Standards, including water quality objectives and beneficial uses for navigable waters of the United
States.  The CWA prohibits discharges from causing or contributing to a violation of such state Water
Quality Standards.  *See* 33 U.S.C. § 1311(b)(1)(c); 40 C.F.R. §§ 122.4(a), (d); 40 C.F.R. §
122.44(d)(1).

22.     The State of California regulates water quality through the State Board and nine
Regional Boards, and each Regional Board maintains a separate Water Quality Control Plan which
contains Water Quality Standards for water bodies within its geographic area.

23.     The San Francisco Bay Regional Water Quality Control Board has adopted the "San
Francisco Bay Basin (Region 2) Water Quality Control Plan" ("Basin Plan"), as amended by
Resolution No. R2-2010-0100, setting forth the Water Quality Standards and beneficial uses for San
Francisco Bay and its tributaries.

24.     The Basin Plan sets forth, among other things, narrative Water Quality Standards for
floating material, oil and grease, sediment, settleable matter, and suspended materials, and sets forth
numeric Water Quality Standards for pH, arsenic, cadmium, chromium VI, copper, cyanide, lead,
mercury, nickel, selenium, silver, tributyltin, zinc, and PAHs.  *See* Basin Plan §§ 3.3.6, 3.3.7, 3.3.9,
3.3.12-3.3.14, 3.3.21, and Table 3-3.  The Basin Plan also includes site specific objectives ("SSOs"),
which are Water Quality Standards for specific sites, for certain pollutants of concern, including
copper and nickel.  *See* Basin Plan Table 3-3A.

25.     In addition, EPA has promulgated Water Quality Standards for toxic priority pollutants

in all California water bodies (the "California Toxics Rule" or "CTR"), which apply to San Francisco Bay and its tributaries, unless expressly superseded by the Basin Plan.  65 Fed. Reg. 31,682 (May 18, 2000); 40 C.F.R. § 131.38.

**The Industrial Stormwater Permit**

26.     In California, the State Board has elected to issue a single, statewide general permit applicable to all stormwater discharges associated with industrial activity.  On April 17, 1997, the State Board adopted the 1997 Permit, which was in effect through June 30, 2015.  On July 1, 2015, the 2015 Permit became effective and superseded the 1997 Permit, except for enforcement purposes.

27.     To discharge stormwater lawfully in California, industrial dischargers (i.e., facility operators) must secure coverage under the Industrial Stormwater Permit by filing a notice of intent and comply with its terms, or obtain and comply with an individual NPDES permit.  1997 Permit, p. II, VII; 2015 Permit, Section I(A) (Findings 8, 12), Attachment C (defining "discharger").

28.     The Industrial Stormwater Permit is an NPDES permit issued pursuant to CWA section 402(p), 33 U.S.C. § 1342(p).  Violations of the Industrial Stormwater Permit are also violations of the CWA.  1997 Permit, Section C(1); 2015 Permit, Section XXI(A).

29.     The Industrial Stormwater Permit contains certain absolute Discharge Prohibitions.  For instance, the Industrial Stormwater Permit prohibits the direct or indirect discharge of materials other than stormwater ("non-stormwater discharges"), which are not otherwise authorized by an NPDES permit, to the waters of the United States.  1997 Permit, Order Part A(1); 2015 Permit, § III(B).

30.     The Industrial Stormwater Permit's Discharge Prohibitions also prohibit stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance.  1997 Permit, Order Part A(2); 2015 Permit, §§ III(C), VI(C).

31.     The Industrial Stormwater Permit includes Receiving Water Limitations that prohibit discharges that adversely impact human health or the environment. 1997 Permit, Order Part C(1); 2015 Permit, § VI(B).

32.     The Industrial Stormwater Permit's Receiving Water Limitations also prohibit discharges that cause or contribute to an exceedance of any applicable water quality standard contained in a statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan. 1997 Permit, Order Part C(2); 2015 Permit, § VI(A).

33.     Under the CWA and the Industrial Stormwater Permit, dischargers must meet Effluent Limitations that require dischargers to employ Best Management Practices ("BMPs") that constitute BAT and BCT to reduce or eliminate stormwater pollution.  33 U.S.C. § 1311(b); 1997 Permit, Order Part B(3); 2015 Permit, Section X(H).

34.     EPA has developed benchmark levels ("Benchmarks") that are objective guidelines to evaluate whether a permittee's BMPs achieve compliance with the BAT/BCT standards.  Final National Pollutant Discharge Elimination System (NPDES) General Permit for Stormwater Discharges From Industrial Activities ("Multi-Sector Permit"), 80 Fed. Reg. 34,403, 34,405 (June 16, 2015); Multi-Sector Permit, 73 Fed. Reg. 56,572, 56,574 (Sept. 29, 2008); Multi-Sector Permit, 65 Fed. Reg. 64,746, 64,766-67 (Oct. 30, 2000).

35.     The 2015 Permit includes Numeric Action Limits ("NALs") that are based on EPA's Benchmarks.  2015 Permit, Section I(M) (Finding 62).  The NALs indicate "the overall pollutant control performance at any given facility." *Id*. at Section I(M) (Finding 61).  However, the NALs do not represent technology-based criteria relevant to determining whether an industrial facility has implemented BMPs that achieve BAT/BCT.  *Id.* at Section I(M) (Finding 62).

36.     According to EPA's Industrial Stormwater Fact Sheet for Sector N, polluted discharges from scrap recycling and waste recycling facilities, such as the Facility, contain chemical oxygen demand ("COD"), total suspended solids ("TSS"), aluminum, copper, iron, lead, and zinc. EPA's Industrial Stormwater Fact Sheet for Sector L also identifies that polluted discharges from landfills, such as the Facility, contain biochemical oxygen demand ("BOD"), TSS, ammonia, alpha terpineol, benzoic acid, p-Cresol, phenol, zinc, and pH.

37.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") at the time industrial activities begin.  1997 Permit, Section A(1)(a) and Order Part E(2);

2015 Permit, Sections I(I) (Finding 54), X(B).  The SWPPP must identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of stormwater and authorized non-stormwater discharges from the facility.  1997 Permit, Section A(2); 2015 Permit, Section X(G). The SWPPP must identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in stormwater and authorized non-stormwater discharges.  1997 Permit, Section A(2); 2015 Permit, Section X(H).  The SWPPP must include BMPs that achieve pollutant discharge reductions attainable via BAT and BCT.  1997 Permit, Order Part B(3); 2015 Permit, Sections I(D) (Finding 32), V(A).

38.    The SWPPP must include:  a narrative description and summary of all industrial activity, potential sources of pollutants, and potential pollutants; a site map indicating the stormwater conveyance system, associated points of discharge, direction of flow, areas of actual and potential pollutant contact, including the extent of pollution-generating activities, nearby water bodies, and pollutant control measures; a description of stormwater management practices; a description of the BMPs to be implemented to reduce or prevent pollutants in stormwater discharges and authorized non-stormwater discharges; the identification and elimination of non-stormwater discharges; the location where significant materials are being shipped, stored, received, and handled, as well as the typical quantities of such materials and the frequency with which they are handled; a description of dust and particulate-generating activities; and a description of individuals and their current responsibilities for developing and implementing the SWPPP.  1997 Permit, Sections A(1)-(10); 2015 Permit, Section X.

39.    The Industrial Stormwater Permit also requires facility operators to properly operate and maintain any facilities and systems of treatment and control installed or used to achieve compliance with the conditions of the Industrial Stormwater Permit and requirements of the SWPPP at all times.  1997 Permit, Section C(5); 2015 Permit, Section XXI(F).

40.    The SWPPP and site maps must be assessed annually and revised as necessary to ensure accuracy and effectiveness.  1997 Permit, Sections A(1), B(3)-(4); 2015 Permit, Sections I(J) (Finding 55), X(B)(1).

41.    The 1997 Permit required facility operators to develop and implement a monitoring and

reporting program ("MRP") when industrial activities begin at a facility.  1997 Permit, Section B(1)-(2) and Order Part E(3).  The MRP must have ensured that stormwater discharges were in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the 1997 Permit.  *Id.* at Section B(2) and B(10).  The MRP must have ensured that practices at the facility to prevent or reduce pollutants in stormwater and authorized non-stormwater discharges were evaluated and revised to meet changing conditions at the facility, including revision of the SWPPP.  *Id.*

42.     The 2015 Permit requires facility operators to monitor and sample stormwater discharges to ensure that the facility is complying with the terms of the permit.  2015 Permit, Sections I(J) (Findings 55-56); XI.

43.     Pursuant to the monitoring and reporting requirements of the Industrial Stormwater Permit, facility operators must conduct ongoing visual observations of stormwater and non-stormwater discharges and record responsive measures taken to eliminate unauthorized non-stormwater discharges and to reduce or prevent pollutants in stormwater and authorized non-stormwater discharges.  1997 Permit, Sections B(3)-(4); 2015 Permit, Section XI(A).

44.     Facility operators must collect a specific number of samples of stormwater discharges from all locations where stormwater may be discharged from the facility.  1997 Permit, Sections B(5), (7); 2015 Permit, Section XI(B)(4)-(5).

45.     The 1997 Permit required facility operators to analyze all stormwater samples for pH, TSS, total organic carbon (or oil and grease as a substitute), specific conductance; toxic chemicals and other pollutants that are likely to be present in stormwater discharges in significant quantities; and other parameters listed in Table D of the 1997 Permit.  1997 Permit, Section B(5)(c).  Table D requires that Sector N and Sector L facilities, such as the Facility, sample for TSS, iron, lead, aluminum, copper, zinc, and COD.

46.     The 2015 Permit requires facility operators to sample for TSS, oil and grease, and pH; parameters associated with the facility's industrial operations; parameters identified in Table 1 of the 2015 Permit based on the facility's SIC code; and applicable industrial parameters related to receiving

COMPLAINT                                                                                          9

waters with 303(d) listed impairments or approved Total Maximum Daily Loads. 2015 Permit, Section XI(B)(6)(a)-(e).

47. The 2015 Permit requires operators of facilities that fall under SIC Code 4953, such as the Facility, to analyze stormwater samples for iron, and for facilities that fall under SIC Code 5093, such as the Facility, to analyze stormwater samples for iron, lead, aluminum, zinc, and COD. 2015 Permit, Table 1.

48. The 2015 Permit further requires facilities subject to Code of Federal Regulations, Title 40 , Chapter I, Subchapter N ("Subchapter N") to sample for the parameters listed therein. 2015 Permit, Section XI(B)(6)(g).

49. Subchapter N requires that wastewater, including contaminated stormwater, discharging from RCRA Subtitle D Non-Hazardous Waste Landfills, such as the Facility, meet effluent limits for BOD, TSS, ammonia, alpha-terpineol, benzoic acid, p-cresol, phenol, zinc, and pH. *See* 40 C.F.R. §§ 445.1(a), 445.2(b), 445.20, 445.21.

## STATEMENT OF FACTS

### Facility Operations and Stormwater Discharges

50. Defendant operates the Facility located at 1601 Dixon Landing Rd. Milpitas, California 95035.

51. The Facility is bounded by Coyote Creek and Penitencia Creek, which are tributaries of San Francisco Bay. The Facility discharges stormwater into Coyote Creek and Penitencia Creek, which then is discharged into San Francisco Bay.

52. San Francisco Bay and its tributaries are waters of the United States.

53. The Facility is regulated by the Industrial Stormwater Permit.

54. Defendant submitted a Notice of Intent to comply with the 1997 Permit to the State Board on or around April 27, 1992.

55. Defendant submitted a Notice of Intent to comply with the 2015 Permit to the State Board on or around June 26, 2015.

56. Operations at the Facility generally include, but are not limited to, solid waste and

recyclable sorting, recyclable commodity storage, solid waste disposal, green waste processing, vehicle and equipment maintenance, and truck parking and fueling operations.

57.    Defendant has self-identified the Facility as falling under SIC codes 4953 and 5093.

58.    Some operations at the Facility occur outdoors and are causing pollutants to be exposed to rainfall.

59.    The types of pollutants that the Facility releases into the immediate environment are known to include, or have the potential to include, among other contaminants: TSS, oil and grease, iron, litter, zinc, copper, nitrate + nitrite ("N+N"), aluminum, selenium, COD, and magnesium.

60.    The industrial materials stored and the pollutants generated at the Facility are exposed to stormwater flows.

61.    Plaintiff is informed and believes, and thereon alleges, that some or all of the stormwater discharging from the Facility comes into direct contact with landfill wastes, the waste handling and treatment areas, and/or landfill wastewater.

62.    Activities at the Facility generate significant debris and particulate matter, which contain pollutants and settle on surfaces within the Facility.  During rain events, this pollution washes off of those surfaces and into stormwater discharge points, which flow to San Francisco Bay.

**Activities Contributing to CWA Violations**

63.    Defendant has not developed and/or implemented an adequate SWPPP at the Facility.

64.    Defendant has not developed and/or implemented BMPs that adequately minimize the exposure of pollutants to stormwater at the Facility.

65.    Defendant has not developed and/or implemented BMPs at the Facility that adequately control and minimize polluted runoff from the Facility.

66.    Defendant has not developed and/or implemented BMPs at the Facility that adequately treat and remove pollutants in stormwater prior to discharge.

67.    Defendant has not developed and/or implemented adequate measures to reduce or eliminate stormwater pollution that constitute BAT/BCT.

68.    Defendant has not developed and/or implemented adequate BMPs at the Facility to

achieve stormwater discharges that meet EPA Benchmarks, NALs, and/or applicable Water Quality Standards.

69.    Defendant has not adequately evaluated and revised the Facility's SWPPP to address these failures.

70.    Defendant has failed to properly operate and maintain the structures and systems that have been put in place at the Facility to achieve compliance with the Industrial Stormwater Permit and its SWPPP requirements.

71.    Defendant has not developed and/or implemented an adequate monitoring and reporting program at the Facility.

72.    Defendant's monitoring and reporting activities have not resulted in practices that adequately reduce or prevent pollutants from discharging from the stormwater flows from the Facility.

73.    Defendant's monitoring activities have not effectively identified compliance problems at the Facility or resulted in effective revisions of the SWPPP.

74.    Due to Defendant's lack of effective pollution prevention measures, including effective BMPs, and their failure to implement an effective monitoring and reporting program, stormwater from the Facility becomes polluted with many constituents. Pollutants become entrained in stormwater when such water flows over and across the outdoor areas of the Facility.

75.    Defendant's annual stormwater sampling results indicate that the Facility's discharges of stormwater are consistently contaminated with higher levels of pollutants than are permissible under the Industrial Stormwater Permit and the CWA.

76.    Defendant's annual stormwater sampling results indicate that the Facility's discharges of stormwater are regularly contaminated with higher levels of pollutants than are consistent with BMPs that constitute BAT/BCT.

77.    Defendant's repeated stormwater exceedances of EPA Benchmarks over the past five years for pollutants, including TSS, iron, N+N, aluminum, selenium, COD, and magnesium, indicate that Granite Rock has failed and continues to fail to meet BAT/BCT.

78.    Over the last five years, Defendant has not sampled its stormwater discharges for all

applicable parameters, including all parameters included in Subchapter N, 40 C.F.R. § 445.21.

## CLAIMS

## FIRST CLAIM FOR RELIEF

**Discharges in Excess of Effluent Limitations in Violation of the Industrial Stormwater Permit and the Clean Water Act**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

79.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

80.     The CWA and the Industrial Stormwater Permit include effluent limitations, which prohibit the discharge of pollutants from the Facility in concentrations above the level commensurate with the application of BAT for toxic pollutants and BCT for conventional pollutants.

81.     Defendant has discharged and continues to discharge stormwater from the Facility containing levels of pollutants that do not achieve compliance with the BAT/BCT requirements during every significant rain event (defined by EPA as a rainfall event generating 0.1 inches or more of rain) occurring from July 1, 2011 through the present.  Defendant's failure to develop and/or implement BMPs adequate to achieve the pollutant discharge reductions attainable via BAT or BCT at the Facility is a violation of the Industrial Stormwater Permit and the CWA.  *See* 1997 Permit, Order Part B(3); 2015 Permit, Sections I(D) (Finding 32), V(A); 33 U.S.C. § 1311(b).

82.     Each day since at least July 1, 2011 that Defendant has discharged stormwater from the Facility containing pollutants in excess of BAT/BCT requirements is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

83.     Defendant's CWA violations described in the paragraphs above will continue in the future, as violations of Sections I(D) and V(A) of the 2015 Permit, until Defendant develops and implements BMPs at the Facility adequate to achieve pollutant discharge reductions attainable via BAT and BCT.

84.     By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

85.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

86.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SECOND CLAIM FOR RELIEF

**Discharges in Excess of Discharge Prohibitions and Receiving Water Limitations in Violation of the Industrial Stormwater Permit and the Clean Water Act**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

87.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

88.     The Industrial Stormwater Permit prohibits stormwater discharges from causing or threatening to cause pollution, contamination, or nuisance.  *See* 1997 Permit, Order Part A(2); 2015 Permit, Sections III(C), VI(C).

89.     Receiving Water Limitations of the Industrial Stormwater Permit require that stormwater discharges and authorized non-stormwater discharges shall not adversely impact human health or the environment.  *See* 1997 Permit, Order Part C(1); 2015 Permit, Section VI(B).

90.     Finally, the Industrial Storwmater Permit prohibits discharges that cause or contribute to a violation of any water quality standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.  1997 Permit, Order Part C(2); 2015 Permit, Section VI(A).

91.     Since at least July 1, 2011, Defendant has been discharging polluted stormwater from the Facility in violation of the prohibitions of the Industrial Stormwater Permit during every significant rain event (defined by EPA as a rainfall event generating 0.1 inches or more of rain).  *See* Exhibit 1, Notice Letter at Attachment 2.

92.     The polluted stormwater discharged from the Facility during every significant rain event contains pollutants harmful to fish, plants, birds, and human health that have adversely affected, and continue to adversely affect, human health and the environment in violation of Receiving Water

Limitation C(1) of the 1997 Permit and Section VI(B) of the 2015 Permit.

93.     Discharges of polluted stormwater from the Facility have in the past caused, and will continue to cause, pollution, contamination, and/or nuisance to the waters of the United States in violation of Discharge Prohibition A(2) of the 1997 Permit, and Sections III(C) and VI(C) of the 2015 Permit.

94.     Discharges of polluted stormwater from the Facility have in the past caused, and will continue to cause or contribute to violations of the Water Quality Standards set forth in the Basin Plan in violation of Order Part C(2) of the 1997 Permit and Section VI(A) of the 2015 Permit.

95.     Each day since at least July 1, 2011 that Defendant has discharged polluted stormwater from the Facility in violation of the Industrial Stormwater Permit is a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

96.     By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

97.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

98.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## THIRD CLAIM FOR RELIEF

**Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan, in Violation of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

99.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

100.     The Industrial Stormwater Permit requires dischargers of stormwater associated with industrial activity to develop and implement an adequate SWPPP when they commence industrial

activity.  1997 Permit, Section A(1); 2015 Permit, Section X(B).

101.    Defendant, as of July 1, 2011, has commenced industrial activity and continues to conduct industrial activity at the Facility.

102.    Defendant has failed and continues to fail to develop and implement an adequate SWPPP or implement all necessary revisions to the SWPPP for the Facility as required by the Industrial Stormwater Permit.

103.    Defendant has failed and continues to fail to develop or implement a SWPPP for the Facility that includes BMPs adequate to meet the requirements of the Industrial Stormwater Permit, specifically, Section A of the 1997 Permit and Section X of the 2015 Permit.

104.    Defendant has failed and continues to fail to adequately develop or implement a SWPPP at the Facility that prevents discharges from violating the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations of the Industrial Stormwater Permit.

105.    Each day since July 1, 2011 that Defendant has failed to adequately develop and/or implement a SWPPP for the Facility in violation of the Industrial Stormwater Permit is a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

106.    Defendant has been in violation of the Industrial Stormwater Permit's SWPPP requirements every day since July 1, 2011.  Defendant will continue to be in violation of the SWPPP requirements each day that Defendant fails to develop and fully implement an adequate SWPPP for the Facility.

107.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

108.    An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

109.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

controversy exists as to the rights and other legal relations of the Parties.

## **FOURTH CLAIM FOR RELIEF**

**Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Plan in Violation of the Industrial Stormwater Permit and the Clean Water Act**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

110.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

111.     Since at least July 1, 2011, Defendant has failed to sample its stormwater discharges for all applicable parameters, including but not limited to parameters required by Subchapter N, 40 C.F.R. § 445.21, as required by the Industrial Stormwater Permit.

112.     For example, Defendant has failed to sample for ammonia, since at least July 1, 2011.

113.     Defendant has failed and continues to fail to develop an adequate monitoring program for the Facility, in violation of the Industrial Stormwater Permit.

114.     Defendant has failed and continues to fail to adequately implement the monitoring program for the Facility, in violation of the Industrial Stormwater Permit.

115.     Defendant has failed and continues to fail to adequately revise the monitoring program for the Facility, in violation of the Industrial Stormwater Permit.

116.     Defendant has been in violation of Industrial Stormwater Permit monitoring requirements at the Facility every day from July 1, 2011, to the present.

117.     Defendant's violations of the Industrial Stormwater Permit monitoring requirements and the CWA at the Facility are ongoing and continuous.

118.     Defendant will continue to be in violation of Section B and Provision E(3) the 1997 Permit, Section XI of the 2015 Permit, and the CWA each and every day it fails to adequately develop, implement, and/or revise the monitoring program for the Facility.

119.     Each and every violation of the Industrial Stormwater Permit monitoring requirements at the Facility is a separate and distinct violation of the CWA.

120.     By committing the acts and omissions alleged above, the Defendant is subject to an

assessment of civil penalties for each and every violation of the CWA occurring from July 1, 2011, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

121.    An action for injunctive relief under the CWA is authorized by Section 505(a) of the CWA. 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and Plaintiff's members and the citizens of the State of California, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

122.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiff prays for judgment against the Defendant as set forth hereafter.

## **RELIEF REQUESTED**

Baykeeper respectfully requests this Court to grant the following relief:

1.    Declare Defendant to have violated and to be in violation of sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for discharging pollutants from the Facility in violation of a permit issued pursuant to section 402(p) of the CWA, 33 U.S.C. § 1342(p), for failing to meet effluent limitations which include the Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology requirements, and for failing to comply with the substantive and procedural requirements of the Industrial Stormwater Permit;

2.    Enjoin Defendant from discharging pollutants from the Facility to stormwater discharge points, which discharge to San Francisco Bay;

3.    Order Defendant to restore all receiving waters damaged by Defendant's illegal discharges of pollutants from the Facility;

4.    Enjoin Defendant from violating sections 301(a) and (b) and section 402(p) of the Clean Water Act and from violating the substantive and procedural requirements of the Industrial Stormwater Permit at the Facility;

5.    Order Defendant to pay civil penalties for each violation of the CWA at $37,500.00 per day per violation for all CWA violations between January 12, 2009 and November 1, 2015, and

$51,570.00 per day per violation for violations that occurred after November 2, 2015, as permitted by CWA Section 309(d), 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4 (2009);

6.      Award Plaintiff its costs (including reasonable attorney, witness, and consultant fees) as authorized by the CWA section 505(d), 33 U.S.C. § 1365(d);

7.      Award such other relief as this Court may deem appropriate.


Dated:  November 6, 2017                           Respectfully Submitted,

                                                   SAN FRANCISCO BAYKEEPER, INC.


                                                   /s/ Erica A. Maharg
                                                   _____

                                                   Erica A. Maharg
                                                   Attorneys for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1



SAN FRANCISCO

# BAYKEEPER®

July 1, 2016

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

Newby Island Resource Recovery Park
Attn: William Shreeder/ Scott McCourty
1601 Dixon Landing Rd.
Milpitas, CA 95035

International Disposal Corp. of California
Allied Waste North America, LLC
Allied Waste Services of North America, LLC
Browning-Ferris Industries of California, Inc.
Republic Services, Inc.
18500 N. Allied Way
Phoenix, AZ 85054

CT Corporation System
Agent for Service of Process for:
   International Disposal Corp. of California
   Allied Waste North America, LLC
   Allied Waste Services of North America, LLC
   Browning-Ferris Industries of California, Inc.
   Republic Services, Inc.
818 W. Seventh St., 2nd Floor
Los Angeles, CA 90017

**Re:    Notice of Violation and Intent to File Suit under the Clean Water Act**

Dear Sir or Madam:

      I am writing on behalf of San Francisco Baykeeper ("Baykeeper") to give notice that Baykeeper intends to file a civil action against the International Disposal Corp. of California; Allied Waste North America, LLC; Allied Waste Services of North America, LLC; Browning-Ferris Industries of California, Inc.; and Republic Services, Inc. (collectively, "Operators") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA") at the Newby Island Resource Recovery Park located respectively at 1601 Dixon Landing Road, on the border of Milpitas and San Jose, California ("Newby Island" or the "Facility").

      Baykeeper is a non-profit public benefit corporation organized under the laws of California, with its office in Oakland, California. Baykeeper's purpose is to protect and enhance the water quality and natural resources of San Francisco Bay, its tributaries, and other waters in the Bay Area, for the benefit of its ecosystems and communities. Baykeeper has over five thousand members and supporters who use and enjoy San Francisco Bay and other waters for various recreational, educational, and spiritual purposes. Baykeeper's members' use and enjoyment of these waters are negatively affected by the pollution caused by Newby Island's operations.

 

Notice of Intent to File Suit
July 1, 2016
Page 2 of 10

This letter addresses the Operators' unlawful discharge of pollutants from the Facility via stormwater into Coyote Creek and Lower Penitencia Creek (collectively, "Receiving Waters"), which then empty into San Francisco Bay. Specifically, Baykeeper's investigation of the Facility has uncovered significant, ongoing, and continuous violations of the CWA and the General Industrial Stormwater Permit issued by the State of California (NPDES General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Permit") and by Order No. 2014-0057-DWQ ("2015 Permit") (collectively, the "Industrial Stormwater Permit").[1]

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), a citizen must give notice of his or her intent to file suit. 33 U.S.C. § 1365(b). Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the State in which the violations occur. As required by section 505(b), this Notice of Violation and Intent to File Suit provides notice to the Operators of the violations that have occurred and which continue to occur at the Facility. After the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, Baykeeper intends to file suit in federal court against the Operators under CWA section 505(a) for the violations described more fully below.

During the 60-day notice period, Baykeeper is willing to discuss effective remedies for the violations noticed in this letter. We suggest that the Operators contact us within the next twenty (20) days so that these discussions may be completed by the conclusion of the 60-day notice period. Please note that we do not intend to delay the filing of a complaint in federal court, even if discussions are continuing when the notice period ends.

## I.    THE LOCATION OF THE ALLEGED VIOLATIONS

### A. The Facility

Newby Island is divided into four areas. The Newby Island Compost Facility ("NICF"), located on the west end of the Facility, processes green and wood waste. The Newby Island Landfill ("NILF") is a solid waste facility in operation since 1932 and covering 342 acres. The NILF accepts grit, screenings, wastewater treatment sludge, contaminated soils, clean soils, and municipal solid waste. The Newby Island Recyclery is a material recovery facility, located in the southeast corner of the Facility. Finally, a vehicle parking area and fueling station is located in the northwest area of the material recovery facility. This area also includes a bin storage area, metal storage, and bin maintenance and wash area. Potential pollutants from the Facility include pH, total suspended solids ("TSS"), chemical oxygen demand, oil and grease, heavy metals, litter

---

[1] On April 1, 2014, the State Water Resources Control Board adopted the 2015 Permit. As of July 1, 2015, the 2015 Permit superseded the 1997 Permit except for the purpose of enforcing violations of the 1997 Permit. 2015 Permit, Section I.A. (Finding 6).

Notice of Intent to File Suit
July 1, 2016
Page 3 of 10

and other pollutants.  Stormwater from the Facility discharges directly to the Receiving
Waters, which then discharge to San Francisco Bay after a short distance.

### B.  The Affected Water

Coyote Creek is a water of the United States.  It is the predominant drainage in
the eastern portions of San Jose and is an important ecological resource in the Santa Clara
Valley.  Historically, Coyote Creek supported numerous fish populations, including
steelhead, Coho salmon, and Chinook salmon.  Steelhead and Chinook salmon still use
Coyote Creek for spawning and early development life stages.  Coyote Creek is also
important habitat for numerous aquatic and riparian plants and animals in the region.

Lower Penitencia Creek is a water of the United States.  The Lower Penitencia
Creek Watershed is approximately 30 square miles and is within the larger Coyote Creek
watershed.  It flows through Milpitas and San Jose.  It confluences with Coyote Creek
before flowing into San Francisco Bay.

San Francisco Bay is a water of the United States.  The Bay is an ecologically-
sensitive waterbody and a defining feature of Northern California.  San Francisco Bay is
an important and heavily-used resource, with special aesthetic and recreational
significance for people living in the surrounding communities.  However, the Bay's water
quality is impaired and continues to decline. The Bay's once-abundant and varied
fisheries have been drastically diminished by pollution, and much of the wildlife habitat
of the Bay has been degraded.

The CWA requires that water bodies such as San Francisco Bay meet water
quality objectives that protect specific "beneficial uses."  The beneficial uses of San
Francisco Bay and its tributaries include commercial and sport fishing, estuarine habitat,
fish migration, navigation, preservation of rare and endangered species, water contact and
non-contact recreation, shellfish harvesting, fish spawning, and wildlife habitat.
Contaminated stormwater from the Facility adversely affects the water quality of the San
Francisco Bay watershed and threatens the beneficial uses and ecosystem of this
watershed, which includes habitat for threatened and endangered species.

### II.    THE FACILITY'S VIOLATIONS OF THE CLEAN WATER ACT

It is unlawful to discharge pollutants to waters of the United States, such as San
Francisco Bay and its tributaries, without an NPDES permit or in violation of the terms
and conditions of an NPDES permit.  CWA § 301(a), 33 U.S.C. § 1311(a); *see also* CWA
§ 402(p), 33 U.S.C. § 1342(p) (requiring NPDES permit issuance for the discharge of
stormwater associated with industrial activities).  The Industrial Stormwater Permit
authorizes certain discharges of stormwater, conditioned on compliance with its terms.

On or around April 27, 1992, the Operators submitted their original Notice of
Intent ("NOI") to be authorized to discharge stormwater from the Facility under the
Industrial Stormwater Permit.  On or around June 26, 2015, the Operators submitted an

Notice of Intent to File Suit
July 1, 2016
Page 4 of 10

NOI to be authorized to discharge stormwater from the Facility under the 2015 Permit.[2]
However, information available to Baykeeper indicates that stormwater discharges from
the Facility have violated several terms of the Industrial Stormwater Permit and the
CWA.  Apart from discharges that comply with the Industrial Stormwater Permit, the
Facility lacks NPDES permit authorization for any other discharges of pollutants into
waters of the United States.

### A.  Discharges in Excess of Technology Based Effluent Limitations

The Industrial Stormwater Permit includes technology-based effluent limitations,
which prohibit the discharge of pollutants from the Facility in concentrations above the
level commensurate with the application of best available technology economically
achievable ("BAT") for toxic pollutants[3] and best conventional pollutant control
technology ("BCT") for conventional pollutants.[4]  1997 Permit, Order Part B.3.; 2015
Permit, Section X.H.  EPA has published Benchmark values set at the maximum
pollutant concentration levels present if an industrial facility is employing BAT and BCT,
as listed in Attachment 1 to this letter.[5]  The 2015 Permit incorporates these Benchmark
values as "Numeric Action Levels."  2015 Permit, Section I.M. (Finding 62).

The Facility's self-reported exceedances of Benchmark values over the last five
(5) years, identified in Attachment 2 to this letter, indicate that the Operators have failed
and are failing to employ measures that constitute BAT and BCT in violation of the
requirements of the Industrial Stormwater Permit.  Baykeeper alleges and notifies the
Operators that their stormwater discharges from the Facility have consistently contained
and continue to contain levels of pollutants that exceed Benchmark values for TSS,
chemical oxygen demand, magnesium, selenium, nitrate+nitrite (N+N), iron, and
aluminum.

The Facility's ongoing discharges of stormwater containing levels of pollutants
above EPA Benchmark values and BAT- and BCT-based levels of control also
demonstrate that the Operators have not developed and implemented sufficient Best
Management Practices ("BMPs") at the Facility.  Proper BMPs could include, but are not
limited to, moving certain pollution-generating activities under cover or indoors,

---

[2] The June 26, 2015 NOI lists Allied Waste of North America, LLC as the operator.  According to the
California Secretary of State website, no corporate entity with that name exists.
[3] BAT is defined at 40 C.F.R. § 125.3 and made applicable to RCRA Subtitle D non-hazardous waste
landfills at 40 C.F.R. § 445.23.  Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead,
and zinc, among others.
[4] BCT is defined at 40 C.F.R. § 125.3 and made applicable RCRA Subtitle D non-hazardous waste landfills
at 40 C.F.R. § 445.22.  Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, oil
and grease, pH, and fecal coliform.
[5] The Benchmark values are part of EPA's Multi-Sector General Permit ("MSGP") and can be found at:
http://water.epa.gov/polwaste/npdes/stormwater/EPA-Multi-Sector-General-Permit-MSGP.cfm.  The most
recent sector-specific Benchmarks can be found at:
http://water.epa.gov/polwaste/npdes/stormwater/upload/msgp2015_part8.pdf ("2015 MSGP").  SIC Code
5093 is covered under Sector N in the 2015 MSGP.

Notice of Intent to File Suit
July 1, 2016
Page 5 of 10

capturing and effectively filtering or otherwise treating all stormwater prior to discharge, frequent sweeping to reduce the build-up of pollutants on-site, installing filters in downspouts and storm drains, and other similar measures.

The Operators' failure to develop and/or implement adequate pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the CWA and the Industrial Stormwater Permit each and every day the Facility discharges stormwater without meeting BAT and BCT. Baykeeper alleges that the Operators have discharged stormwater containing excessive levels of pollutants from the Facility to Receiving Waters during at least every significant local rain event over 0.1 inches in the last five (5) years.[6] Attachment 3 compiles all dates in the last five (5) years when a significant rain event occurred. The Operators are subject to civil penalties for each violation of the Industrial Stormwater Permit and the CWA within the past five (5) years.

### B.  Discharges in Excess of Receiving Water Limitations

In addition to employing technology based effluent limitations, the Industrial Stormwater Permit requires dischargers to comply with Receiving Water Limitations. 1997 Permit, Order Part C; 2015 Permit, Section VI.  The Receiving Water Limitations prohibit discharges that cause or contribute to an exceedance of applicable water quality standards ("WQS").  1997 Permit, Order Part C.2.; 2015 Permit, Section VI.A. Applicable WQS are set forth in the California Toxics Rule ("CTR")[7] and Chapter 3 of the San Francisco Bay Basin (Region 2) Water Quality Control Plan ("Basin Plan").[8]  *See* Attachment 1.  Exceedances of WQS are violations of the Industrial Stormwater Permit, the CTR, and the Basin Plan.

The Basin Plan establishes WQS for San Francisco Bay and its tributaries, including but not limited to the following:

- Waters shall not contain substances in concentrations that result in the deposition of material that cause nuisance or adversely affect beneficial uses.

- Waters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses.

- Waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses.  Increases from normal background light penetration or turbidity relatable to waste discharge shall not be greater than 10 percent in areas where natural turbidity is greater than 50 NTU.

---

[6] Significant local rain events are reflected in the rain gauge data available at: http://www.ncdc.noaa.gov/cdo-web/search.
[7] The CTR is set forth at 40 C.F.R. § 131.38 and is explained in the Federal Register preamble accompanying the CTR promulgation set forth at 65 Fed. Reg. 31,682 (May 18, 2000).
[8] The Basin Plan is published by the San Francisco Bay Regional Water Quality Control Board at: http://www.waterboards.ca.gov/sanfranciscobay/basin_planning.shtml#2004basinplan.

Notice of Intent to File Suit
July 1, 2016
Page 6 of 10

- All waters shall be maintained free of toxic substances in concentrations that are lethal to or that produce other detrimental responses in aquatic organisms.

- Surface waters shall not contain concentrations of chemical constituents in amounts that adversely affect any designated beneficial use. The Basin Plan, Table 3-4, identifies specific freshwater water quality objectives for toxic pollutants.[9]

Coyote Creek and South San Francisco Bay currently exceed water quality standards for certain pollutants, and have been listed on California's list of impaired waters ("303(d) list"). *See* CWA § 303(d), 33 U.S.C. § 1313(d).[10] Of the pollutants that are likely to be discharged from the Facility, Coyote Creek is impaired for trash, and South San Francisco Bay is impaired for trash and selenium.

The Industrial Stormwater Permit includes additional Receiving Water Limitations that prohibit stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance. *See* 1997 Permit, Order Part A.2.; 2015 Permit, Sections III.C., VI.C. The Receiving Water Limitations also prohibit stormwater discharges to surface or groundwater that adversely impact human health or the environment. 1997 Permit, Order Part C.1.; 2015 Permit, Section VI.B.

Baykeeper alleges that the Facility's stormwater discharges have caused or contributed to exceedances of the Receiving Water Limitations in the Industrial Stormwater Permit and applicable WQS. These allegations are based on the Facility's self-reported data submitted to the San Francisco Bay Regional Water Quality Control Board. The sampling results indicate that the Facility's discharges are causing or threatening to cause pollution, contamination, and/or nuisance; adversely impact human health or the environment; and violate applicable WQS. For example, the Facility's sampling results indicate exceedances of numeric WQS for selenium. *See* Attachment 2.

Baykeeper alleges that each day that the Facility has discharged stormwater from the Facility, the Facility's stormwater has contained levels of pollutants that exceeded one or more of the Receiving Water Limitations. Baykeeper alleges that the Operators have discharged stormwater exceeding Receiving Water Limitations from the Facility to San Francisco Bay during at least every significant local rain event over 0.1 inches in the last five (5) years. *See* Attachment 3. Each discharge from the Facility that violates a Receiving Water Limitation constitutes a separate violation of the Industrial Stormwater Permit and the CWA. The Operators are subject to penalties for each violation of the Industrial Stormwater Permit and the CWA within the last five (5) years.

---

[9] Basin Plan, Table 3-4 is available at:
http://www.waterboards.ca.gov/sanfranciscobay/water_issues/programs/planningtmdls/basinplan/web/docs/bp_ch3+tables.pdf
[10] California's 303(d) list is available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2012.shtml

### C. Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan

The Industrial Stormwater Permit requires dischargers to develop and implement an adequate Storm Water Pollution Prevention Plan ("SWPPP"). 1997 Permit, Section A.1.a. and Order Part E.2.; 2015 Permit, Sections I.I. (Finding 54), X.B. The Industrial Stormwater Permit also requires dischargers to make all necessary revisions to existing SWPPPs promptly. 1997 Permit, Order Part E.2.; 2015 Permit, Section X.B.

The SWPPP must include, among other requirements, the following: a site map, a list of significant materials handled and stored at the site, a description and assessment of all potential pollutant sources, a description of the BMPs that will reduce or prevent pollutants in stormwater discharges, and specifications of BMPs designed to reduce pollutant discharge to BAT and BCT levels. 1997 Permit, Sections A.1-A.10.; 2015 Permit, Section X. Moreover, the Industrial Stormwater Permit requires dischargers to evaluate and revise SWPPPs to ensure they meet these minimum requirements, in particular that the necessary BMPs are in place and being implemented. *See* 1997 Permit, Section A.9. (requiring a comprehensive site compliance evaluation completed each reporting year, and revisions to the SWPPP implemented within 90 days after the evaluation); 2015 Permit, Section X.D.2.a. (obligating the discharger to "ensure its SWPPP is developed, implemented and revised as necessary to be consistent with any applicable municipal, state, and federal requirements that pertain to the requirements in [the 2015 Permit].").

Based on information available to Baykeeper, the Operators have failed to prepare and/or implement an adequate SWPPP and/or to revise the SWPPP to satisfy each of the requirements of the Industrial Stormwater Permit. For example, the Operators' past or current SWPPP has not/does not include and/or the Operators have not implemented adequate BMPs designed to reduce pollutant levels in discharges to BAT and BCT levels in accordance with the Industrial Stormwater Permit, as evidenced by the data in Attachment 2.

Accordingly, the Operators have violated the CWA each and every day that they have failed to develop and/or implement an adequate SWPPP meeting all of the requirements of the Industrial Stormwater Permit, and the Operators will continue to be in violation every day until they develop and implement an adequate SWPPP. The Operators are subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring within the past five (5) years.

### D. Failure to Properly Sample Stormwater Discharges

The Operators are also in violation of the Industrial Stormwater Permit for failing to sample stormwater for all required parameters. Specifically, the Operators shall analyze all collected samples for all parameters required by Code of Federal Regulations, Title 40, Chapter I, Subchapter N ("Subchapter N"). 1997 Permit, Section B.6; 2015 Permit, Section XI.B.6.g. As a Resource Conservation and Recovery Act ("RCRA")

Notice of Intent to File Suit
July 1, 2016
Page 8 of 10

Subtitle D non-hazardous waste landfill, the Facility is subject to Subchapter N requirements.  *See* 40 C.F.R. § 445.21; *see also* Facility SWPPP, § XI.B.6.  Pursuant to these requirements, the Facility must analyze its stormwater samples for Ammonia (as N).  In the last five (5) years, the Facility has failed to meet this requirement.

As a result of the Operators' failure to properly sample stormwater discharges from the Facility, the Operators have been in daily and continuous violation of the Industrial Stormwater Permit and the CWA each and every day for the past five (5) years. These violations are ongoing.  The Operators will continue to be in violation of the sampling requirements each day that the Operators fail to adequately develop and/or implement an effective sampling program at the Facility.  The Operators are subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring for the last five (5) years.

### E. Unpermitted Discharges

Section 301(a) of the CWA prohibits the discharge of any pollutant into waters of the United States unless the discharge is authorized by a NPDES permit issued pursuant to section 402 of the CWA.  *See* 33 U.S.C. §§ 1311(a), 1342.  The Operators sought coverage for the Facility under the Industrial Stormwater Permit, which states that any discharge from an industrial facility not in compliance with the Industrial Stormwater Permit "must be either eliminated or permitted by a separate NPDES permit."  1997 Permit, Order Part A.1.; *see also* 2015 Permit, Sections I.A. (Finding 8) and I.C. (Finding 28).

Because the Operators have not obtained coverage under a separate NPDES permit and have failed to eliminate discharges not permitted by the Industrial Stormwater Permit, each and every discharge from the Facility described herein not in compliance with the Industrial Stormwater Permit has constituted and will continue to constitute a discharge without CWA permit coverage in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).  The Operators are subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring for the last five (5) years.

## IV.    PERSONS RESPONSIBLE FOR THE VIOLATIONS.

The International Disposal Corp. of California; Allied Waste North America, LLC; Allied Waste Services of North America, LLC; Browning-Ferris Industries of California, Inc.; and Republic Services, Inc. are the persons responsible for the violations at the Facility described above.

Notice of Intent to File Suit
July 1, 2016
Page 9 of 10

## V.    NAME AND ADDRESS OF NOTICING PARTY

San Francisco Baykeeper, Inc.
1736 Franklin Street, Suite 800
Oakland, CA 94612
(510) 735-9700

## VI.    COUNSEL

Baykeeper is represented by the following counsel in this matter, to whom all communications should be directed:

Erica Maharg, Staff Attorney
San Francisco Baykeeper
1736 Franklin Street, Suite 800
Oakland, CA 94612
(510) 735-9700

Erica Maharg: (510) 735-9700 x106, erica@baykeeper.org

## VII.    REMEDIES.

Baykeeper intends, at the close of the 60-day notice period or thereafter, to file a citizen suit under CWA section 505(a) against the Operators for the above-referenced violations.  Baykeeper will seek declaratory and injunctive relief to prevent further CWA violations pursuant to CWA sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), and such other relief as permitted by law.  In addition, Baykeeper will seek civil penalties pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, against the Operators in this action.  The CWA imposes civil penalty liability of up to $37,500 per day per violation for violations occurring after January 12, 2009.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.  Baykeeper will seek to recover attorneys' fees, experts' fees, and costs in accordance with CWA section 505(d), 33 U.S.C. § 1365(d).

As noted above, Baykeeper is willing to meet with you during the 60-day notice period to discuss effective remedies for the violations noted in this letter.  Please contact me to initiate these discussions.

Sincerely,

Erica A. Maharg
Staff Attorney
San Francisco Baykeeper

Notice of Intent to File Suit
July 1, 2016
Page 10 of 10


Cc:


Gina McCarthy, Administrator
U.S. Environmental Protection Agency
Mail Code: 1101A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Bruce Wolfe, Executive Officer
Regional Water Quality Control Board
San Francisco Bay Region
1515 Clay Street, Suite 1400
Oakland, CA 94612


Alexis Strauss, Acting Reg. Administrator
U.S. EPA, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Thomas Howard, Executive Director
State Water Resources Control Board
1001 I Street
Sacramento, CA 95814

# Attachment 1:  Benchmarks and Water Quality Standards for Discharges to Freshwater

## A. Benchmarks Applicable to Newby Island Resource Recovery Park

| Parameter | Units | Benchmark Value | Source(s) |
|---|---|---|---|
| pH | SU | 6.0 – 9.0 | 2015 MSGP[1] IGP[2] ELG[3] |
| Total Suspended Solids | mg/L | 88 | ELG |
| Chemical Oxygen Demand | mg/L | 120 | 2015 MSGP IGP ELG |
| Oil and Grease | mg/L | 15 | IGP |
| Aluminum Total | mg/L | 0.75 | IGP |
| Iron Total | mg/L | 1.0 | IGP |
| Lead Total | mg/L | 0.095 | 2015 MSGP* IGP |
| Zinc Total | mg/L | 0.13 | 2015 MSGP* IGP |
| Ammonia as Nitrogen | mg/L | 2.14 | 2015 MSGP IGP |
| Nitrate + Nitrite as Nitrogen | mg/L | 0.68 | IGP |
| Alpha-Terpineol | mg/L | 0.033 | ELG |

[1] "2015 MSGP" refers to the United States Environmental Protection Agency National Pollutant Discharge Elimination System (NPDES) Multi-Sector General Permit For Stormwater Discharges Associated With Industrial Activity, effective June 4, 2015.

[2] "IGP" refers to the National Pollutant Discharge Elimination System General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ.

[3] "ELG" refers to the effluent limitations in 40 C.F.R. Chapter 1 Part 445 Subpart B.

| | | | |
|---|---|---|---|
| Benzoic Acid | mg/L | 0.12 | ELG |
| p-Cresol | mg/L | 0.025 | ELG |
| Phenol | mg/L | 0.026 | ELG |
| Arsenic | mg/L | 0.15 | 2015 MSGP |
| Magnesium | mg/L | 0.064 | 2015 MSGP IGP |
| Mercury | mg/L | 0.0014 | 2015 MSGP IGP |
| Selenium | mg/L | 0.005 | 2015 MSGP IGP |
| Biochemical Oxygen Demand (BOD) | mg/L | 30 | IGP ELG |
| Cyanide | mg/L | 0.022 mg/L | 2015 MSGP |

**\*** Assuming a water hardness range of 100-125 mg/L

## B. Water Quality Standards (Basin Plan, Table 3-4)

| Parameter | Units | WQS Value |
|---|---|---|
| pH | SU | 6.5 – 8.5 |
| Lead | mg/L | 0.065 |
| Arsenic | mg/L | 0.340 |
| Zinc | mg/L | 0.12 |
| Cyanide | mg/L | 0.022 |
| Mercury | mg/L | 0.0024 |
| Selenium | mg/L | 0.020 |

# Attachment 2:  Table of Exceedances for
# Newby Island Resource Recovery Park

Table containing each stormwater sampling result which exceeds EPA Benchmarks and/or causes or contributes to an exceedance of Basin Plan Water Quality Standards.  The EPA Benchmarks and Basin Plan Water Quality Standards are listed in Attachment 1.  All stormwater samples were reported by the Facility during the past five (5) years.

| Reporting Period | Sample Date | Sampling Point | Parameter | Result | Units |
|---|---|---|---|---|---|
| 2011-2012 | 2/29/2012 | LC-2A | Iron  Total | 5.1 | mg/L |
| 2011-2012 | 2/29/2012 | LC-4A | Iron  Total | 6.3 | mg/L |
| 2011-2012 | 2/29/2012 | LC-4A | Total Suspended Solids (TSS) | 120 | mg/L |
| 2012-2013 | 11/30/2012 | LC-13 | Iron  Total | 2.3 | mg/L |
| 2012-2013 | 11/30/2012 | LC-14 | Iron  Total | 9.5 | mg/L |
| 2012-2013 | 11/30/2012 | LC-2A | Iron  Total | 260 | mg/L |
| 2012-2013 | 11/30/2012 | LC-2A | Total Suspended Solids (TSS) | 8800 | mg/L |
| 2012-2013 | 1/24/2013 | LC-14 | Iron  Total | 6.4 | mg/L |
| 2012-2013 | 1/24/2013 | LC-14 | Total Suspended Solids (TSS) | 540 | mg/L |
| 2012-2013 | 1/24/2013 | LC-1A | Total Suspended Solids (TSS) | 300 | mg/L |
| 2012-2013 | 1/24/2013 | LC-2A | Iron  Total | 1.2 | mg/L |
| 2012-2013 | 1/24/2013 | LC-2A | Total Suspended Solids (TSS) | 160 | mg/L |
| 2012-2013 | 1/24/2013 | LC-4 | Iron  Total | 11 | mg/L |
| 2012-2013 | 1/24/2013 | LC-4 | Total Suspended Solids (TSS) | 110 | mg/L |
| 2012-2013 | 1/24/2013 | LC-6 | Iron  Total | 3 | mg/L |
| 2012-2013 | 1/24/2013 | LC-6 | Total Suspended Solids (TSS) | 230 | mg/L |
| 2012-2013 | 1/24/2013 | LC-7 | Iron  Total | 8.3 | mg/L |
| 2012-2013 | 1/24/2013 | LC-7 | Total Suspended Solids (TSS) | 800 | mg/L |
| 2012-2013 | 1/24/2013 | LC-8 | Iron  Total | 8.5 | mg/L |
| 2012-2013 | 1/24/2013 | LC-8 | Total Suspended Solids (TSS) | 3000 | mg/L |
| 2013-2014 | 11/20/2013 | LC-12 | Iron  Total | 39 | mg/L |
| 2013-2014 | 11/20/2013 | LC-12 | Total Suspended Solids (TSS) | 1400 | mg/L |
| 2013-2014 | 11/20/2013 | LC-13 | Iron  Total | 62 | mg/L |
| 2013-2014 | 11/20/2013 | LC-13 | Total Suspended Solids (TSS) | 2200 | mg/L |
| 2013-2014 | 11/20/2013 | LC-3A | Iron  Total | 610 | mg/L |
| 2013-2014 | 11/20/2013 | LC-3A | Total Suspended Solids (TSS) | 19000 | mg/L |
| 2013-2014 | 2/6/2014 | LC-1A | Iron  Total | 9.5 | mg/L |
| 2013-2014 | 2/6/2014 | LC-1A | Total Suspended Solids (TSS) | 930 | mg/L |
| 2013-2014 | 2/6/2014 | LC-2A | Iron  Total | 4.2 | mg/L |
| 2013-2014 | 2/6/2014 | LC-3A | Iron  Total | 2.7 | mg/L |
| 2013-2014 | 2/6/2014 | LC-4 | Iron  Total | 12 | mg/L |
| 2013-2014 | 2/6/2014 | LC-4 | Total Suspended Solids (TSS) | 160 | mg/L |
| 2013-2014 | 2/6/2014 | LC-6 | Iron  Total | 3.1 | mg/L |
| 2013-2014 | 2/6/2014 | LC-6 | Total Suspended Solids (TSS) | 110 | mg/L |

| 2013-2014 | 2/6/2014 | LC-7 | Iron Total | 2.5 | mg/L |
|---|---|---|---|---|---|
| 2014-2015 | 12/11/2014 | LC-2A | Iron Total | 140 | mg/L |
| 2014-2015 | 12/11/2014 | LC-2A | Total Suspended Solids (TSS) | 2800 | mg/L |
| 2014-2015 | 12/11/2014 | LC-3 | Iron Total | 3.7 | mg/L |
| 2014-2015 | 12/11/2014 | LC-3A | Iron Total | 10 | mg/L |
| 2014-2015 | 12/11/2014 | LC-3A | Total Suspended Solids (TSS) | 390 | mg/L |
| 2014-2015 | 12/11/2014 | LC-4 | Iron Total | 9.5 | mg/L |
| 2014-2015 | 12/11/2014 | LC-4 | Total Suspended Solids (TSS) | 200 | mg/L |
| 2014-2015 | 12/11/2014 | LC-6 | Iron Total | 12 | mg/L |
| 2014-2015 | 12/11/2014 | LC-6 | Total Suspended Solids (TSS) | 420 | mg/L |
| 2014-2015 | 12/11/2014 | LC-7 | Iron Total | 13 | mg/L |
| 2014-2015 | 12/11/2014 | LC-7 | Total Suspended Solids (TSS) | 260 | mg/L |
| 2014-2015 | 12/11/2014 | LC-9 | Iron Total | 12 | mg/L |
| 2014-2015 | 12/11/2014 | LC-9 | Total Suspended Solids (TSS) | 270 | mg/L |
| 2014-2015 | 2/7/2015 | LC-13 | Iron Total | 1.7 | mg/L |
| 2014-2015 | 2/7/2015 | LC-2A | Iron Total | 2.4 | mg/L |
| 2014-2015 | 2/7/2015 | LC-2A | Total Suspended Solids (TSS) | 110 | mg/L |
| 2014-2015 | 2/7/2015 | LC-3A | Iron Total | 1.5 | mg/L |
| 2014-2015 | 2/7/2015 | LC-4 | Iron Total | 1.5 | mg/L |
| 2014-2015 | 2/7/2015 | LC-4A | Iron Total | 7.6 | mg/L |
| 2014-2015 | 2/7/2015 | LC-4A | Total Suspended Solids (TSS) | 330 | mg/L |
| 2014-2015 | 2/7/2015 | LC-7 | Iron Total | 2.6 | mg/L |
| 2014-2015 | 2/7/2015 | LC-7 | Total Suspended Solids (TSS) | 200 | mg/L |
| 2014-2015 | 2/7/2015 | LC-8 | Iron Total | 1.5 | mg/L |
| 2014-2015 | 2/7/2015 | LC-8 | Total Suspended Solids (TSS) | 120 | mg/L |
| 2015-2016 | 12/3/2015 | LC-4 | Chemical Oxygen Demand | 200 | mg/L |
| 2015-2016 | 12/3/2015 | LC-4 | Magnesium Total | 94 | mg/L |
| 2015-2016 | 12/3/2015 | LC-4 | Nitrate/nitrite as N | 2.4 | mg/L |
| 2015-2016 | 12/3/2015 | LC-4 | Selenium Total | 0.017 | mg/L |
| 2015-2016 | 12/3/2015 | SW-1 | Chemical Oxygen Demand | 330 | mg/L |
| 2015-2016 | 12/3/2015 | SW-1 | Iron Total | 1.8 | mg/L |
| 2015-2016 | 12/3/2015 | SW-1 | Magnesium Total | 720 | mg/L |
| 2015-2016 | 12/3/2015 | SW-1 | Selenium Total | 0.037 | mg/L |
| 2015-2016 | 12/10/2015 | LC-1 | Chemical Oxygen Demand | 440 | mg/L |
| 2015-2016 | 12/10/2015 | LC-1 | Magnesium Total | 240 | mg/L |
| 2015-2016 | 12/10/2015 | LC-1 | Nitrate/nitrite as N | 9.1 | mg/L |
| 2015-2016 | 12/10/2015 | LC-1 | Selenium Total | 0.022 | mg/L |
| 2015-2016 | 12/10/2015 | LC-13 | Aluminum Total | 1.6 | mg/L |
| 2015-2016 | 12/10/2015 | LC-13 | Chemical Oxygen Demand | 150 | mg/L |
| 2015-2016 | 12/10/2015 | LC-13 | Iron Total | 2.8 | mg/L |
| 2015-2016 | 12/10/2015 | LC-13 | Magnesium Total | 83 | mg/L |
| 2015-2016 | 12/10/2015 | LC-13 | Selenium Total | 0.012 | mg/L |
| 2015-2016 | 12/10/2015 | LC-4 | Aluminum Total | 1.6 | mg/L |
| 2015-2016 | 12/10/2015 | LC-4 | Iron Total | 2.8 | mg/L |

| 2015-2016 | 12/10/2015 | LC-4 | Magnesium Total | 29 | mg/L |
|---|---|---|---|---|---|
| 2015-2016 | 12/10/2015 | LC-4 | Nitrate/nitrite as N | 1.3 | mg/L |
| 2015-2016 | 12/10/2015 | LC-7 | Aluminum Total | 18 | mg/L |
| 2015-2016 | 12/10/2015 | LC-7 | Chemical Oxygen Demand | 230 | mg/L |
| 2015-2016 | 12/10/2015 | LC-7 | Iron  Total | 37 | mg/L |
| 2015-2016 | 12/10/2015 | LC-7 | Magnesium Total | 120 | mg/L |
| 2015-2016 | 12/10/2015 | LC-7 | Nitrate/nitrite as N | 7.1 | mg/L |
| 2015-2016 | 12/10/2015 | LC-7 | Selenium Total | 0.016 | mg/L |
| 2015-2016 | 12/10/2015 | LC-7 | Total Suspended Solids (TSS) | 580 | mg/L |
| 2015-2016 | 12/10/2015 | S-1 | Aluminum Total | 1.1 | mg/L |
| 2015-2016 | 12/10/2015 | S-1 | Chemical Oxygen Demand | 360 | mg/L |
| 2015-2016 | 12/10/2015 | S-1 | Iron  Total | 3.2 | mg/L |
| 2015-2016 | 12/10/2015 | S-1 | Magnesium Total | 600 | mg/L |
| 2015-2016 | 12/10/2015 | S-1 | Selenium Total | 0.029 | mg/L |
| 2015-2016 | 3/5/2016 | LC-1 | Chemical Oxygen Demand | 370 | mg/L |
| 2015-2016 | 3/5/2016 | LC-1 | Magnesium Total | 290 | mg/L |
| 2015-2016 | 3/5/2016 | LC-1 | Nitrate/nitrite as N | 7.7 | mg/L |
| 2015-2016 | 3/5/2016 | LC-1 | Selenium Total | 0.02 | mg/L |
| 2015-2016 | 3/5/2016 | LC-4 | Aluminum Total | 1.1 | mg/L |
| 2015-2016 | 3/5/2016 | LC-4 | Chemical Oxygen Demand | 340 | mg/L |
| 2015-2016 | 3/5/2016 | LC-4 | Iron  Total | 1.5 | mg/L |
| 2015-2016 | 3/5/2016 | LC-4 | Magnesium Total | 230 | mg/L |
| 2015-2016 | 3/5/2016 | LC-4 | Nitrate/nitrite as N | 0.92 | mg/L |
| 2015-2016 | 3/5/2016 | LC-4 | Selenium Total | 0.032 | mg/L |
| 2015-2016 | 3/5/2016 | LC-6 | Aluminum Total | 15 | mg/L |
| 2015-2016 | 3/5/2016 | LC-6 | Chemical Oxygen Demand | 350 | mg/L |
| 2015-2016 | 3/5/2016 | LC-6 | Iron  Total | 22 | mg/L |
| 2015-2016 | 3/5/2016 | LC-6 | Magnesium Total | 210 | mg/L |
| 2015-2016 | 3/5/2016 | LC-6 | Nitrate/nitrite as N | 12 | mg/L |
| 2015-2016 | 3/5/2016 | LC-6 | Selenium Total | 0.04 | mg/L |
| 2015-2016 | 3/5/2016 | LC-6 | Total Suspended Solids (TSS) | 420 | mg/L |
| 2015-2016 | 3/5/2016 | LC-7 | Aluminum Total | 32 | mg/L |
| 2015-2016 | 3/5/2016 | LC-7 | Chemical Oxygen Demand | 440 | mg/L |
| 2015-2016 | 3/5/2016 | LC-7 | Iron  Total | 47 | mg/L |
| 2015-2016 | 3/5/2016 | LC-7 | Magnesium Total | 250 | mg/L |
| 2015-2016 | 3/5/2016 | LC-7 | Nitrate/nitrite as N | 16 | mg/L |
| 2015-2016 | 3/5/2016 | LC-7 | Selenium Total | 0.035 | mg/L |
| 2015-2016 | 3/5/2016 | LC-7 | Total Suspended Solids (TSS) | 1000 | mg/L |

## Attachment 3: Alleged Dates of Exceedances by
## Newby Island Resource Recovery Park
## July 1, 2011 to June 30, 2016

Days with precipitation one-tenth of an inch or greater, as reported by NOAA's National Climatic Data Center; San Jose, CA station, GHCND:USW00023293, when a stormwater discharge from the Facility is likely to have occurred.   http://www.ncdc.noaa.gov/cdo-web/search

| 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|------|------|------|------|------|------|
| 10/3 | 1/20 | 1/6 | 1/30 | 2/6 | 1/5 |
| 10/4 | 1/21 | 1/24 | 2/6 | 2/8 | 1/6 |
| 10/5 | 1/23 | 2/19 | 2/7 | 3/11 | 1/15 |
| 10/6 | 2/13 | 3/7 | 2/26 | 4/6 | 1/16 |
| 11/4 | 2/29 | 4/4 | 2/28 | 4/7 | 1/17 |
| 11/5 | 3/16 | 9/21 | 3/1 | 4/25 | 1/18 |
| 11/19 | 3/24 | 11/19 | 3/3 | 5/14 | 1/19 |
| 11/20 | 3/25 | 11/20 | 3/29 | 6/10 | 1/22 |
|  | 3/27 |  | 3/31 | 11/2 | 1/31 |
|  | 3/31 |  | 4/1 | 11/15 | 1/17 |
|  | 4/10 |  | 4/25 | 11/25 | 1/18 |
|  | 4/12 |  | 9/25 | 12/3 | 2/17 |
|  | 4/13 |  | 10/25 | 12/10 | 2/18 |
|  | 4/25 |  | 10/31 | 12/11 | 3/4 |
|  | 6/4 |  | 11/13 | 12/13 | 3/5 |
|  | 10/22 |  | 11/20 | 12/18 | 3/6 |
|  | 11/1 |  | 11/29 | 12/19 | 3/7 |
|  | 11/17 |  | 11/30 | 12/21 | 3/11 |
|  | 11/18 |  | 12/2 | 12/22 | 3/13 |
|  | 11/21 |  | 12/3 | 12/24 | 3/21 |
|  | 11/28 |  | 12/11 | 12/28 | 4/8 |
|  | 11/29 |  | 12/12 |  | 4/9 |
|  | 11/30 |  | 12/15 |  | 4/10 |
|  | 12/2 |  | 12/16 |  | 4/22 |
|  | 12/5 |  | 12/17 |  | 5/6 |
|  | 12/12 |  | 12/19 |  | 5/21 |
|  | 12/15 |  |  |  |  |
|  | 12/17 |  |  |  |  |
|  | 12/22 |  |  |  |  |
|  | 12/23 |  |  |  |  |
|  | 12/25 |  |  |  |  |
|  | 12/26 |  |  |  |  |
|  | 12/29 |  |  |  |  |