Erica A. Maharg (Bar No. 279396)
Nicole C. Sasaki (Bar No. 298736)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: erica@baykeeper.org
Email: nicole@baykeeper.org

*Attorneys for Plaintiff*
SAN FRANCISCO BAYKEEPER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a California non-profit corporation;<br><br>              Plaintiff,<br>    v.<br><br>INTERNATIONAL DISPOSAL CORP. OF CALIFORNIA; and BROWNING-FERRIS INDUSTRIES OF CALIORNIA, INC.,<br><br>              Defendants. | Civil Case No. 5:17-cv-06444-NC<br><br>**STIPULATED REQUEST FOR ENTRY OF [PROPOSED] CONSENT DECREE AND DISMISSAL; [PROPOSED] ORDER**<br><br>(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)<br><br>Magistrate Judge Nathanael M. Cousins |

WHEREAS, on March 7, 2018, Plaintiff San Francisco Baykeeper ("Baykeeper") and Defendants International Disposal Corp. of California and Browning-Ferris Industries of California (collectively, "IDC") notified the Court that the parties had reached a tentative settlement in this action and served copies of the [Proposed] Consent Decree via U.S. Mail to the U.S. Department of Justice and U.S. Environmental Protection Agency for a mandatory 45-day review period under 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5;

WHEREAS, on March 8, 2018, the Court continued the case management conference to May 30, 2018 at 10:00 a.m. and ordered the parties to file either a dismissal or case management statement by May 23, 2018, *see* Dkt. No. 13;

WHEREAS, on April 30, 2018, the U.S. Department of Justice notified the Court and the Parties that it does not object to the entry of the [Proposed] Consent Decree, *see* Dkt. No. 15;

WHEREFORE, the Parties hereby stipulate and request that the Court approve and enter the [Proposed] Consent Decree as an Order of the Court, order that the above-captioned action be dismissed with prejudice, and retain jurisdiction over the Parties for the sole purpose of enforcing compliance by the Parties with the terms of the [Proposed] Consent Decree until the [Proposed] Consent Decree terminates;

WHEREFORE, the Parties hereby stipulate and request the Court to approve and enter the [Proposed] Order attached hereto and vacate the case management conference and all other deadlines in this matter.

Dated: May 1, 2018      SAN FRANCISCO BAYKEEPER, INC.

By: /s/ Erica A. Maharg
Erica A. Maharg
Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

Dated: May 1, 2018      LAW OFFICES OF THOMAS M. BRUEN, P.C.

By: /s/ Thomas M. Bruen
Thomas M. Bruen
Attorney for Defendants
INTERNATIONAL DISPOSAL CORP. OF CALIFORNIA, and BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC.

I attest that concurrence in the filing of this document has been obtained from Thomas M. Bruen for Defendants.

DATE: May 1, 2018 _____/s/ Erica A. Maharg___
Erica A. Maharg
Attorney for Plaintiff

**[~~PROPOSED~~] ORDER**

    **IT IS HEREBY ORDERED** that the [~~Proposed~~] Consent Decree, attached hereto as Exhibit A, is fully incorporated herein by reference and is entered as an Order of the Court.

    **IT IS FURTHER ORDERED** that the Court shall retain jurisdiction over the Parties for the sole purpose of enforcing compliance by the Plaintiff and Defendant with the terms of the Consent Decree until the Consent Decree terminates.

    **IT IS FURTHER ORDERED** that the case management conference scheduled for May 30, 2018 at 10:00 a.m., and all other deadlines, are vacated.

    **IT IS FURTHER ORDERED** that the above-captioned action against Defendants is dismissed with prejudice

**IT IS SO ORDERED.**

Dated:    May 1, 2018



HONORABLE NATHANAEL M. COUSINS
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT A

Erica A. Maharg (Bar No. 279396)
Nicole C. Sasaki (Bar No. 298736)
SAN FRANCISCO BAYKEEPER
1736 Franklin St., Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: erica@baykeeper.org
Email: nicole@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a California non-profit corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>INTERNATIONAL DISPOSAL CORP. OF CALIFORNIA and BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC.;<br><br>        Defendants. | Case No.: 5:17-cv-06444-NC<br><br>~~[PROPOSED]~~ **CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

# CONSENT DECREE

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of San Francisco Bay and other area waters;

WHEREAS, Defendants International Disposal Corp. of California and Browning-Ferris Industries of California, Inc., (collectively, "Defendants") operate the Newby Island Resource Recovery Park, which is a landfill, compost facility, and material recovery facility, located at 1601 Dixon Landing Road, Milpitas, California 95035 ("Facility");

WHEREAS, Baykeeper and Defendants are collectively referred to herein as the "Parties";

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ, issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. § 1342 (hereinafter "Industrial Stormwater Permit"). These industrial activities include, *inter alia*, solid waste and recyclable sorting, recycling commodity storage, solid waste disposal, green waste processing, vehicle and equipment maintenance, and truck parking and fueling operations;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including Defendants: (1) develop and implement a stormwater pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on July 1, 2016, Baykeeper served Defendants, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Water Board"), and the Regional Administrator of EPA

Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Industrial Stormwater Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility;

WHEREAS, on November 6, 2017, Baykeeper filed a complaint ("Complaint") alleging certain violations of the Act and the Industrial Stormwater Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility;

WHEREAS, Defendants deny all allegations and claims contained in the Complaint and reserve all rights and defenses with respect to such allegations and claims;

WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I. OBJECTIVES

1.    It is the express purpose of the Parties to resolve those issues alleged by Baykeeper in its 60-Day Notice and Complaint.  In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree and to comply with the Industrial Stormwater Permit and all applicable provisions of the Clean Water Act.

## II. TERM OF CONSENT DECREE

2.    **Effective Date**:  The Effective Date of this Consent Decree shall be the date when both of the following have occurred: (a) the last day for the U.S. Department of Justice to provide comment on this Consent Decree, i.e., the 45th day following the U.S. Department of Justice's receipt of the Consent Decree and (b) the approval of this Consent Decree by the U.S. District Court.

3.    **Term of Consent Decree**:  This Consent Decree shall continue in effect until September 30, 2021 (the "Term"), at which time the Consent Decree, and all obligations under it, shall automatically terminate, unless one of the Parties has invoked Dispute Resolution in accordance with Paragraph 26, and then the Consent Decree will automatically terminate when Dispute Resolution is complete, as

evidenced by a court order or mutual agreement of the Parties.

4. **Early Termination**: If Defendants cease industrial operations at the site and file a Notice of Termination ("NOT") under the Industrial Stormwater Permit prior to the termination date of this Consent Decree, Defendants shall send Baykeeper a copy of the proposed NOT concurrent with its submittal to the Regional Water Board. Within ten (10) days of the Regional Water Board's approval of the NOT, Defendants shall notify Baykeeper in writing of the approval and remit all outstanding payments, including stipulated payments, to Baykeeper. In the event a new successor or assign continues industrial operations at the site and assumes responsibility for implementation of this Consent Decree pursuant to Paragraph 46, Defendants shall notify Baykeeper within ten (10) days of the transition.

### III. BEST MANAGEMENT PRACTICES

5. In order to further reduce or prevent pollutants associated with industrial activity from discharging via stormwater to the waters of the United States, Defendants shall implement additional appropriate structural and non-structural Best Management Practices ("BMPs") as provided in Paragraphs 6-11.

6. **Site Map**: The most recent Site Map dated December 29, 2017 reflects current conditions at the Facility and is attached hereto as Exhibit 1. Within thirty (30) days of the Effective Date, Defendants shall update the Site Map included in the Facility SWPPP to incorporate all structural BMPs required by Paragraph 8 or otherwise implemented at the Facility. Defendants shall also review and ensure the Site Map complies with the Industrial Stormwater Permit, Section X.E. Specifically, the Site Map shall clearly denote (a) the topography and the direction of stormwater flow for each drainage area of the Facility, (b) property boundaries, (c) known or suspected drop inlets, (d) ground type (pervious or impervious), (e) any permanent structures and features, (f) discharge points, (g) sampling points, and (h) all other physical structures or items relevant under the Industrial Stormwater Permit and this Consent Decree. During the Term, if Defendants makes significant changes to the Facility, such as moving a discharge or sampling point, materially modifying the topography of the site so as to change a drainage area, or removing or adding structural BMPs, Defendants shall update the Site Map as required under section X.B of the Industrial Stormwater Permit, but in any event Defendants shall update the Site Map

at least annually based on the aerial survey of the Facility. Defendants shall submit all revised Site Maps to Baykeeper and upload to the Storm Water Multiple Application and Report Tracking System ("SMARTS"), within thirty (30) days.

7. **Storm Drain Inlet/Catch Basin Best Management Practices:**

A. <u>Storm Drain Inlet/Catch Basin Inspections:</u> Within thirty (30) days of the Effective Date and between September 1 and October 1 of each subsequent year, Defendants shall inspect any storm drain inlets, catch basins, discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility. Defendants shall promptly clean, as needed, each drain inlet, catch basin, discharge and sampling point, filtration/treatment device, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris.

B. <u>Storm Drain Inlet/Catch Basin Maintenance and Cleaning</u>: Between October 1 to May 31 of each year ("Wet Season"), on a monthly basis and once in between storm events, but not more than once per week, Defendants shall inspect all storm drain inlets, catch basins, discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment or debris. Defendants shall properly dispose of any dust, sediment, debris, or other removed pollutants.

C. <u>Log of Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning</u>: Defendants shall prepare and maintain a log of the Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning described herein ("Maintenance Log"). The Maintenance Log shall indicate the staff who completed the maintenance activity and when it was completed. The Maintenance Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within ten (10) days advance request by Baykeeper, provided Baykeeper may make such requests only once per calendar month.

8. **Structural Best Management Practices**

A. Defendants shall develop and fully implement the following structural BMPs on or before the Effective Date:

i. <u>Perimeter Road</u>: Defendants shall regrade and add gravel to the perimeter road as needed, including but not limited to the areas LC-13 and LC-4A marked on the Drainage Improvements

Map attached hereto Exhibit 2, to sufficiently armor the underlying surface, to prevent erosion, and to ensure all sampling locations are accessible for sampling. Defendants shall annually inspect the perimeter road to identify areas that need to be regraded or require additional gravel. Defendants shall include the results of that inspection in the End-of-Season Summary required by Paragraph 14.

ii.    Rock Check Dams: Defendants shall construct rock check dams as depicted on the second page of the Drainage Improvements Map. Defendants shall install a minimum of eighty (80) rock check dams, at a maximum frequency of two hundred (200) linear feet, based on average grade of the site along the perimeter swale. Defendants shall construct the check dams at appropriate height and with material suitable to promote stormwater settling along the perimeter swale. Defendants shall identify the location of each rock check dam on the revised Site Map required by Paragraph 6.

iii.    Filtrexx Rolls:  Unless the discharge point is temporarily bypassed to redirect flow to the next discharge point in order to facilitate construction, Defendants shall install Filtrexx rolls at each discharge point, consistent with manufacturer specifications.

iv.    Wattles:  Defendants shall install wattles, as depicted on the second page of the Drainage Improvements Map, as needed, but specifically at all discharge points lacking vegetation, directly before discharge points.  At discharge points lacking vegetation, Defendants shall combine the wattles with silt fences.

v.    Construction Debris Area: As depicted on the Drainage Improvements Map, Defendants shall construct a berm and channel to drain all stormwater from the construction debris sorting and staging area to the sedimentation basin in Drainage Area 2.  Concurrent with the first sampling event after the Effective Date, Defendants shall sample the stormwater discharging from the construction debris area.  Defendants may also sample up-gradient locations to determine to what extent the pollutants in the sample of stormwater discharging from the construction debris area reflect pollutants added to stormwater by the Construction Debris area. Based on the comparative sampling results, Defendants will identify appropriate preliminary treatment controls such as silt fencing, straw wattles and/or Filtrexx soxx for the reduction of metals in storm water, to provide initial treatment prior to the sedimentation basin in Drainage Area 2, if needed. Defendants shall report to Baykeeper the sampling results and proposal for additional treatment controls or, in the alternative, an explanation of

why additional treatment controls are not necessary within thirty (30) days of receiving the sampling results.

vi.  <u>Green Waste Area</u>:  Defendants shall relocate the green waste receiving and grinding operation to a location near the Compost Facility, as depicted on Exhibit 1. All stormwater contacting the green waste receiving and grinding operation will be collected and segregated into a lined pond that will not discharge from the Facility, except as allowed under the Defendant's Contingency Plan for high flow rates. The Defendant's Contingency Plan is attached hereto as Exhibit 4.

vii.  <u>Ground Cover</u>: Defendants shall collect samples from ground cover currently placed at the Facility and conduct waste extraction test ("WET") analysis for all current stormwater monitoring parameters included in Exhibit 3.  The WET analysis will determine the leachability of the ground cover. Newby shall use the least leachable ground cover to cover all disturbed areas at the Facility, including but not limited to the area near discharge point LC-3A marked on the Drainage Improvements Map.  Throughout the term of this Consent Decree, Newby will continue to use the least leachable ground cover to promptly cover all disturbed areas of the landfill.

viii.  <u>Brow Berm</u>:  Defendants shall construct a brow berm on the crest of the northwesterly facing slop of the Facility, as depicted on the Drainage Improvements Map, Exhibit 2.

ix.  <u>Down Chutes</u>:  Defendants shall construct down chutes, in at least two locations, to the west of drainage point LC-4 and to the west of drainage point LC-4A, as depicted on the Drainage Improvements Map, Exhibit 2.

B.  **Maintenance of BMP Structural Controls:**  Beginning on the Effective Date or the date of installation, Defendants shall maintain all structural BMPs at the Facility in good operating condition, including but not limited to maintaining or replacing structural BMPs according to any applicable manufacturers' recommendations, and shall promptly repair any damaged or degraded structural BMPs.

9.  **Employee Training:**  Defendants shall develop and implement an employee training program that meets the following requirements:

A.  Within thirty (30) days of the Effective Date, Defendants shall develop and implement a training program, including any training materials needed for effective implementation of the training

program, for the Facility ("Training Program").  The Training Program shall ensure: (1) that there are sufficient number of employees delegated to achieve compliance with the Industrial Stormwater Permit and this Consent Decree, and (2) that these employees are properly trained to perform the activities required by the Industrial Stormwater Permit and this Consent Decree.  At a minimum, the Training Program shall require the following:

         i.      <u>Language.</u>  Defendants shall conduct the Training Program in the language or languages in which all employees participating are fluent;

         ii.      <u>BMP Training.</u>  Defendants shall train all employees with duties directly or indirectly related to implementing BMPs on the BMPs included in this Consent Decree and the SWPPP to ensure that BMPs are implemented effectively and on schedule and structural BMPs are maintained properly.  Defendants shall train individual employees on their specific responsibilities in implementing BMPs.

         iii.      <u>Stormwater Sampling Training.</u>  Defendants shall designate an adequate number of employees necessary to collect stormwater samples as required by this Consent Decree.  The Training Program shall include the proper sampling protocols to ensure stormwater samples are properly collected, stored, and submitted to a certified laboratory.

         iv.      <u>Visual Observation Training.</u>  Defendants shall provide training on how and when to properly conduct visual observations to all employees performing visual observations at the Facility.

         v.      <u>Non-Stormwater Discharge Training.</u>  Defendants shall train all employees at the Facility on the Industrial Stormwater Permit's prohibition of non-stormwater discharges, so that employees know what non-stormwater discharges are, that non-stormwater discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-stormwater discharges.

         vi.      <u>Participation</u>.  All employees at the Facility with duties directly or indirectly related to complying the Industrial Stormwater Permit or this Consent Decree shall participate in the Training Program within thirty (30) days of the Effective Date and annually thereafter.  New employees shall participate in the Training Program within thirty (30) days of their hiring date.

vii. <u>Training Representative</u>. The Training Program shall be provided by a representative who is familiar with the requirements of this Consent Decree and the Industrial Stormwater Permit.

viii. <u>Records</u>. Defendants shall maintain training records to document compliance with this section, and shall provide Baykeeper with a copy of these records within ten (10) days of receipt of a written request.

ix. <u>SWPPP Updates</u>. If and when appropriate, Defendants shall integrate any new training requirements resulting from this Consent Decree into the Facility SWPPP. Defendants shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

10. **Amendment of SWPPP**:

A. Within thirty (30) days of the Effective Date, Defendants shall amend, and submit to Baykeeper, the Facility SWPPP to incorporate the requirements and BMPs set forth in this Section III of the Consent Decree and Section X of the Industrial Stormwater Permit. Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP consistent with the other provisions of this Consent Decree. Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, Defendants shall make all of Baykeeper's changes to the amended SWPPP unless Defendants timely request a meet and confer in accordance with Paragraph 26 to discuss any concerns. Compliance with the SWPPP, as amended in accordance with this Paragraph, shall at all times be a requirement of this Consent Decree.

B. Defendants shall revise, and submit to Baykeeper, the Facility SWPPP if there are any material changes in the Facility's operations, including, but not limited to, changes to stormwater discharge points or BMPs.

C. Baykeeper shall provide comments, if any, to Defendants within thirty (30) days of receipt of the revised SWPPP. Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, Defendants shall make all of Baykeeper's changes to the amended SWPPP unless Defendants timely request a meet and confer in accordance with Paragraph 26 to discuss any concerns.

D.     Defendants shall upload the Facility SWPPP to SMARTS within thirty (30) days of finalizing revisions in accordance with this Consent Decree.

11.   **Additional BMPs**:  The BMPs included in this Section constitute a preliminary approach to stormwater management at the Facility.  If, after implementing these BMPs, the sampling conducted in accordance with Section IV indicates that the Facility's stormwater discharges continue to exceed the Target Levels in Exhibit 3 or otherwise do not meet the Discharge Prohibitions and/or Receiving Water Limitations in Sections III and VI of the Industrial Stormwater Permit, Defendants shall either propose additional BMPs as part of any Action Plan to the extent required by the Industrial Stormwater Permit and/or make a non-industrial pollutant source demonstration or a natural background pollutant source demonstration as allowed under the Industrial Stormwater Permit and in accordance with Paragraph 16 below.

## IV.  SAMPLING, MONITORING, INSPECTION & REPORTING

12.   **Sampling Program - Stormwater**:  During each Wet Season of the Term, Defendants shall collect and analyze stormwater samples from all discharge points according to the following schedule:

A.     Defendants shall collect and analyze samples from the first two (2) qualifying storm events ("QSEs"), as defined in Section XI.B. of the Industrial Stormwater Permit, within the first half of each reporting year during the Term (July 1 to December 31). In the event that Defendants are unable to take a sample from any discharge points during the first two (2) QSEs of the first half of the reporting year, Defendants shall continue to sample from any subsequent QSE until the second half of the reporting year commences or until two (2) samples have been collected from all discharge points in the first half of the reporting year.

B.     Defendants shall collect and analyze samples from the first two (2) QSEs within the second half of each reporting year during the Term (January 1 to June 30). In the event that Defendants are unable to take a sample from any discharge points during the first two (2) QSEs of the second half of the reporting year, Defendants shall continue to sample from any subsequent QSE until the end of the wet season or until two (2) samples have been collected from all discharge points in the second half of the reporting year.

C.     In the event that Defendants are unable to collect four (4) samples in a Wet Season from each discharge point, Defendants shall explain in writing in the End-of-Season Summary under Paragraph 14 why it was unable to collect the required sample(s).

D.     Each stormwater sample must be analyzed for the presence of each of the parameters listed in Exhibit 3.

E.     Should industrial processes materially change at the Facility, the effluent testing parameters shall be reassessed, and if warranted, parameters shall be added to be consistent with the Industrial Stormwater Permit. Defendants shall notify Baykeeper of any such changes within thirty (30) days of such a change.

F.     **Certified Lab**:  Except for pH samples, Defendants shall have all stormwater samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the Target Levels set forth in Exhibit 3.  Baykeeper shall be permitted, and Defendants will authorize Baykeeper, to verify that the lab analyzing Defendants' stormwater samples that their analysis is proper.

G.     **Sample Result Reporting**:  After the Effective Date, Defendants shall provide complete results from sampling and analysis to Baykeeper and to SMARTS within thirty (30) days of receipt of the laboratory report from each sampling event.

13.  **Rain Gauge**:  Within thirty (30) days of the Effective Date, Defendants shall install a recording rain gauge capable of continuously recording rainfall at the Facility to 0.01 inches.  Defendants shall maintain the rain gauge in accordance with manufacturer's recommendations, maintain records of all maintenance, and provide maintenance records within ten (10) business days of a request by Baykeeper.

14.  **End-of-Season Summary**:  By July 15 following each Wet Season that occurs during the Term, Defendants shall prepare and send to Baykeeper an End-of-Season Summary that includes:  (1) a summary chart with all of the sample results from the previous Wet Season including the constituent concentration(s) from sample(s) collected at the Facility exceeding the Target Levels in Exhibit 3 ("Exceedance(s)"); and (2) identification of any new BMP(s) that Defendants have implemented or will

implement that Defendants have not already discussed in a prior End-of-Season Summary or Action Plan for the immediately previous Wet Season.

15. **Action Plan**: If any Exceedance occurs during the Wet Season, Defendants shall submit an Action Plan in addition to an End-of-Season Summary by July 15 following the Wet Season.

16. **Contents of Action Plan**: If an Action Plan is required, it shall include the following:

A. The possible sources of the Exceedance(s) during the applicable Wet Season;

B. A proposal for and evaluation of new site-specific BMPs designed to reduce pollutants in future stormwater discharges to the Target Levels in Exhibit 3 to the extent required by the Industrial Stormwater Permit and/or make a non-industrial pollutant source demonstration or a natural background pollutant source demonstration as allowed under the Industrial Stormwater Permit and in accordance with Paragraph 16 below.

C. Data, drawings, and other design rationale demonstrating that each proposed site-specific BMP is likely to reduce a specific pollutant in future stormwater discharges to the Target Levels in Exhibit 3; and

D. A schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Wet Season. In any Action Plan, Defendants shall consider appropriate structural BMPs to the extent required by the Industrial Stormwater Permit and/or make a non-industrial pollutant source demonstration or a natural background pollutant source demonstration as allowed under the Industrial Stormwater Permit and in accordance with Paragraph 16 below.

E. A statement of whether Defendants intend to conduct a Non-Industrial Pollutant Source Demonstration or a Natural Background Pollutant Source Demonstration, as permitted by the Industrial Stormwater Permit, Section XII.D.2.b-c ("Demonstration(s)"). The Demonstration must be completed by December 31 of the next Wet Season.

i. Prior to commencing the Demonstration(s), Defendants shall provide Baykeeper with the study protocol for the Demonstration(s). If Defendants propose to conduct a Non-Industrial Pollutant Source Demonstration or a Natural Background Pollutant Source Demonstration, the study protocol shall be conducted pursuant to the Industrial Stormwater Permit. Defendants will not assert that stormwater runoff from the cover at the landfill is from a non-industrial source, and Baykeeper agrees

that stormwater runoff solely from cover shall be considered non-contaminated storm water as defined in 40 C.F.R § 445.2(g).

      ii.      Baykeeper may provide comments on the study protocol within fifteen (15) business days of receipt, and Defendants shall consider and accept Baykeeper's comments into the study protocol within fifteen (15) business days or timely request to meet and confer pursuant to Dispute Resolution, Paragraph 26.

      iii.      The Demonstration based on the study protocol shall result in a written report completed and signed by the Qualified Industrial Stormwater Practitioner ("QISP"), and shall be completed by January 1 after the Action Plan is submitted. If the Demonstration(s) cannot be completed by that deadline due to lack of rain, Defendants shall notify Baykeeper and the Parties shall meet and confer to decide on a new deadline. Defendants shall provide Baykeeper with a copy of the evaluation within thirty (30) days of completion and, if necessary, update its SWPPP within thirty (30) days of completion. Baykeeper may dispute the QISP's determination in accordance with Dispute Resolution, Paragraph 26.

      iv.      Defendants shall use their best efforts to notify Baykeeper of Defendants' intent to take storm water samples off-site at least twenty-four (24) hours before any and all sampling events taken as part of the Demonstration(s) to allow Baykeeper's representative to be present at the sampling event. Defendants shall take photographs of the sampling location at the time of the sampling event, as well as photographs of the sample being taken. Defendants shall provide split samples at all sampling events taken as part of the Demonstration(s). It shall be Baykeeper's responsibility to pick up its split samples and have them analyzed at Baykeeper's sole cost within the specified holding times. Defendants shall provide Baykeeper with the place to pick up the samples in a timely manner. Defendants shall provide all photographs taken pursuant to this Paragraph to Baykeeper within fourteen (14) days of the sampling event.

17.    **Baykeeper Review of Action Plan**:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan. However, if Baykeeper notifies Defendants within thirty (30) days of receipt of the Action Plan that it is unable to provide comments within thirty (30) days, Baykeeper shall have an additional fifteen (15) days to propose revisions to the Action Plan.  Within thirty (30)

days of receiving Baykeeper's proposed revisions, Defendants shall consider each of Baykeeper's recommended revisions to the Action Plan and accept them or timely request to meet and confer, in accordance with Paragraph 26. If Baykeeper does not provide timely comments, the Action Plan will be deemed accepted by Baykeeper.

18.  **Implementation of Action Plan**:

A.      Defendants shall implement the Action Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree.

B.      Defendants shall diligently file and pursue all required applications for permits and/or approvals for the BMPs included in any Action Plan.  Defendants shall further diligently pursue the procurement of contractors, labor, and materials to complete all BMPs by the deadline specified in Defendants' Action Plan.

C.      Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Consent Decree are implemented, Defendants shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP and shall provide Baykeeper with a copy of such revised SWPPP.

19.  **Ongoing Evaluation of BMPs**:  During each Wet Season, Defendants have an ongoing obligation to evaluate the BMPs implemented at the Facility and included in this Consent Decree and any current or previous Action Plans, and, if the Target Levels are exceeded, make attempts to reduce the concentrations to Target Levels for the remainder of the Wet Season.  Defendants shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

20.  **Site Access**:  During the Term of this Consent Decree, Defendants shall permit representatives of Baykeeper to perform up to two (2) physical inspections per year of the Facility during operating hours ("Site Inspection").  Baykeeper shall provide Defendants two business days' notice in advance of such Site Inspections.  Baykeeper shall comply with all safety instructions provided to Baykeeper by Defendants' staff during all Site Inspections.  During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges, logs, and take photos and/or videos.

21.  **Reports**:  During the Term of this Consent Decree, Defendants shall provide Baykeeper with a

copy of all documents submitted to the Regional Water Board or the State Water Board concerning the Facility's compliance with the Industrial Stormwater Permit. Such documents and reports shall be transmitted to Baykeeper via electronic mail at the time the documents are submitted to the Regional Water Board or State Water Board.

## V. MITIGATION, FEES AND COSTS

22. **Environmental Mitigation Funding**: As mitigation for the alleged violations set forth in Baykeeper's 60-Day Notice and Complaint, within thirty (30) days of the Effective Date, Defendants shall pay the sum of Forty Thousand dollars ($ 40,000.00) to Rose Foundation for Communities and the Environment ("Rose Foundation"), a non-profit organization, for projects that will benefit the San Francisco Bay watershed. The Rose Foundation reports the grant funding made with the tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the recipient and purpose of the funds. Payment shall be made to The Rose Foundation for Communities and the Environment, 1970 Broadway, Suite 600, Oakland, CA 94612-2218, within thirty (30) days of the Effective Date, with notice to Baykeeper.

23. **Reimbursement of Fees and Costs**: Defendants shall reimburse Baykeeper in the amount of Fifty-Five Thousand dollars ($ 55,000.00) to help cover Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to Defendants' attention, and negotiating a resolution of this action. Defendants shall tender said payment, payable to Baykeeper, within thirty (30) days of the Effective Date.

24. **Compliance Monitoring Funds:** Defendants shall provide to Baykeeper a total of Fifteen Thousand dollars ($ 15,000.00) for costs and fees associated with monitoring Defendants' compliance with this Consent Decree through the termination date of this Consent Decree, payable as follows: $5,000.00 due to Baykeeper within thirty (30) days of the Effective Date; a second payment of $5,000.00 due to Baykeeper on the first anniversary of the Effective Date; and a third and final payment of $5,000.00 due to Baykeeper on the second anniversary of the Effective Date.

25. **Interest on Late Payments:** Defendants shall pay interest on any payments, fee or costs owed to Baykeeper under this Consent Decree that Baykeeper has not received by the date due. The interest

shall accrue starting the first day after the payment is due and shall be computed at 0.5% per month (6.00% per year).

## VI.  DISPUTE RESOLUTION

26.  **Dispute Resolution**:  If a dispute under this Consent Decree arises or the Parties believe that a breach of this Consent Decree has occurred, they shall follow the following procedure:

A.      The Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.

B.      If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Consent Decree.

C.      The Parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

D.      The Parties must follow the procedures described in this Paragraph for any and all claims that relate to the interpretation or enforcement of any of the provisions of this Consent Decree.

27.  **Stipulated Payments:**  Defendants shall pay the following stipulated payments during the Term.

A.      $ 750 for each failure to collect samples from a Qualifying Storm Event for which sampling was required pursuant to Paragraph 12 and where there was sufficient rain to result in discharges capable of being sampled; and

B.      $100 for each day any document, report, or other communication required in this Consent Decree is late, commencing after five business days after Baykeeper notifies Defendants of their failure to submit the specific document, report, or other communication.

C.      Any stipulated payments described above shall be paid to the Rose Foundation within thirty (30) days of notification of the failure to comply. Once Defendants have fully paid any stipulated

payment due for a violation listed in subsection (A)-(B) of this Paragraph, Baykeeper may not seek any other remedy under this Consent Decree, including attorneys' fee and sanctions, for the violation for which the Stipulated Payment was paid.

## VII. JURISDICTION AND DISMISSAL OF COMPLAINT

28. **Jurisdiction.** For the purposes of this Consent Decree, the Parties stipulate that the United States District Court of California, Northern District of California, has jurisdiction over the Parties and subject matter of this Consent Decree. The Parties stipulate that venue is appropriate in the Northern District of California and that Baykeeper has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

29. **Jurisdiction to Enforce Consent Decree.** The Court referenced above shall retain jurisdiction over the Parties and subject matter of this Consent Decree for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

30. **Submission of Consent Decree to DOJ.** Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, Baykeeper shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by DOJ, evidenced by correspondence from DOJ establishing the review period. In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

31. **Dismissal of Complaint:** If there is no objection by DOJ to this Consent Decree, the Parties shall (a) request the approval and entry of this Consent Decree in the exact form presented to DOJ, and (b) concurrently stipulate to and request dismissal of this action with prejudice. Such dismissal shall not affect the rights and obligations of the Parties under this Consent Decree, nor shall it affect the power of the Court to enforce this Consent Decree. In the event the Court comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by the Court.

## VIII.  WAIVER AND RELEASES

32.   **Baykeeper Waiver and Release of Noticed Parties**:  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns, releases and discharges Defendants, their officers, directors, employees, members, direct and indirect parents, subsidiaries and affiliates, and successors or assigns, agents, attorneys and other representatives, from and waives all claims raised or that could have been raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included or that could have been included in the 60-Day Notice and/or the Complaint.  Nothing in this paragraph shall preclude Baykeeper from exercising or asserting their rights or defenses under this Consent Decree.

33.   **Defendants' Waiver and Release of Baykeeper**:  Defendants, on their own behalf and on behalf of their officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release and discharge Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint. Nothing in this paragraph shall preclude Defendants from exercising or asserting their rights or defenses under this Consent Decree.

## IX.  MISCELLANEOUS PROVISIONS

34.   **Execution in Counterparts**:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

35.   **Signatures**:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

36.   **Construction**:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

37. **Authority to Sign**: The undersigned are authorized to execute this Consent Decree on behalf of their respective Party and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

38. **Integrated Consent Decree**: All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

39. **Severability**: In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

40. **Choice of Law**: This Consent Decree shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

41. **Full Settlement**: This Consent Decree constitutes a full and final settlement of this matter.

42. **Effect of Consent Decree**: Compliance with this Consent Decree does not mean Defendants are complying with the Industrial Stormwater Permit, Clean Water Act, or any other law, rule, or regulation.

43. **No Admission of Liability and No Third-Party Beneficiaries**: Defendants do not admit any liability or that they have violated the Industrial Stormwater Permit, the Clean Water Act, or any other law, ordinance, rule or regulation of any federal, state or local government or regulatory agency. Defendants enter into this Consent Decree solely to avoid the risks and costs of litigation. The Parties agree that nothing in this Consent Decree shall be deemed to be an admission of any facts or of liability on the part of Defendants or any of their officers, directors, employees, direct or indirect parent companies, affiliates, subsidiaries, or other persons or entities associated in any way with Defendants. This Consent Decree is intended by Defendants as a compromise agreement made in reliance on and pursuant to California Evidence Code section 1152 and Federal Rules of Evidence, Rule 408. The parties intend that the contents of this Consent Decree shall not be used in any administrative proceedings, civil action, or other legal proceedings except for the purpose of the interpretation or enforcement of this Consent Decree by the parties hereto, or the assertion of this Consent Decree by Defendants as a defense to any action on any matters or claims settled by this agreement and Consent Decree. By entering into this Consent Decree, the Parties do not intend to confer any benefit on any third parties or to make any other persons or entities third party beneficiaries of this Consent Decree; and this

Consent Decree shall have no such effect.

44. **Negotiated Agreement**: The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

45. **Modification of the Agreement**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Parties.

46. **Assignment**: Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

47. **Notices and Submissions**: Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Baykeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

> San Francisco Baykeeper
> Attention: Nicole Sasaki
> 1736 Franklin St., Suite 800
> Oakland, CA 94612
> E-mail: nicole@baykeeper.org

Unless requested otherwise by Defendants, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Defendants pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

> Michael Caprio
> Area President
> Republic Services
> 3620 Blume Drive, Suite 200
> Richmond, California 94806
> mcaprio@republicservices.com

> Thomas M. Bruen, Esq.
> Law Offices of Thomas M. Bruen, P.C.
> 1990 North California Blvd., Suite 608

Walnut Creek, CA 94596
tbruen@tbsglaw.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

48. **Impossibility of Performance**: No Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood. "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship, inability to pay, or inclement weather. Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

The Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

SAN FRANCISCO BAYKEEPER

Date: 3/6/18

Sejal Choksi-Chugh
Executive Director, San Francisco Baykeeper

Approved as to form:

Date: 3/6/2018

Erica A. Maharg
Managing Attorney, San Francisco Baykeeper

CONFIDENTIAL SETTLEMENT COMMUNICATION

DEFENDANTS INTERNATIONAL DISPOSAL CORP. OF CALIFORNIA and BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC.;.

Date: 3-2-2018

_____

By: John Nickerson, Esq.
Title: Vice President

Approved as to form:

Date: 3-2-2018

_____

Thomas M. Bruen, Esq.
Attorney for Defendants

APPROVED AND SO ORDERED, this __1st__ day of ___May 2018___.



HONORABLE NATHANAEL M. COUSINS
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF CALIFORNIA

GRANTED
Judge Nathanael M. Cousins

---

CONSENT DECREE                    22                    Case No. 5:17-cv-06444-NC

**EXHIBIT 1: SITE MAP**



GRAPHIC SCALE

250' 0' 125' 250' 500' 1000'

LEGEND

—50— EXISTING 10 FT CONTOUR
EXISTING 2 FT CONTOUR
EXISTING PAVED ROAD
EXISTING UNPAVED ROAD
→ DRAINAGE DIRECTION
◆ MONITORING/DISCHARGE POINT

□1 DRAINAGE AREA

NOTES:
1. EXISTING TOPOGRAPHY BASED ON AERIAL SURVEY BY COOPER AERIAL SURVEYS CO. ON JANUARY 28, 2017, UPDATED WITH DRONE SURVEY FROM DRONEVIEW TECHNOLOGIES IN OCTOBER 17, 2017.

2. SITE INFORMATION
   352± ACRES
   7.3% IMPERVIOUS
   92.7% PERVIOUS

3. NO SURFACE WATER, SPRINGS OR WETLANDS PRESENT ONSITE. TOPOGRAPHY AND PERIMETER STRUCTURAL CONTROL MEASURES PREVENT STORM WATER RUN-OFF EXCEPT WHERE INDICATED. RECEIVING WATER: COYOTE CREEK & PENITENCIA CREEK.

LC-1A
LC-9
LC-8
LC-11
LC-7
LC-12
LC-6
LC-13
COYOTE CREEK
LC-14
LC-4
STAGING AREA
SOIL STOCKPILES
ACTIVE FILL AREAS
WOOD PROCESSING & CONSTRUCTION/DEMOLITION AREA
STORAGE AREA
SOIL STOCKPILE
PG&E TOWERS
LC-2A
LC-3
LC-3A
ADMINISTRATION TRAILERS
LEACHATE STORAGE TANKS
LC-1
NEWBY ISLAND COMPOST FACILITY
SCALES
SEE FIGURE 5
LC-4A
STORM WATER BASIN
PENITENCIA CREEK
MAINTENANCE SHOP
NEWBY ISLAND AWS SANTA CLARA COUNTY
DIXON LANDING ROAD
NEWBY ISLAND RECYCLERY
SEE FIGURE 4

SEE FIGURE 4

SEE FIGURE 5

This drawing has not been published but rather has been prepared by Geo-Logic Associates, Inc. for use by the client named in the title block, solely in respect of the construction operation, and maintenance of the facility named in the title block. Geo-Logic Associates, Inc. shall not be liable for the use of this drawing on any other facility or for any other purpose.

| REV. NO. | DATE | DESCRIPTION | DRAWN BY | DESIGNED BY | CHECKED BY | APPROVED BY |
|---|---|---|---|---|---|---|

DATE OF ISSUE: 12/08/17
DESIGNED BY: —
DRAWN BY: CM
CHECKED BY: —
APPROVED BY: —

Geo-Logic
ASSOCIATES
11415 West Bernardo Court, Ste 200, San Diego, CA 92127
geo-logic.com | 858.451.1136

REPUBLIC
SERVICES

NEWBY ISLAND LANDFILL
DRAINAGE
IMPROVEMENTS
MILPITAS, CALIFORNIA
SITE LAYOUT

FIGURE NO.
2

PROJECT NO.
S017.1280



CORRUGATED DOWN DRAIN W/
"T" DIVERTER AND ROCK OUTFALL

BENCH HAS DRAINAGE CHANNEL
W/ GRAVEL BAGS AND WATTLES
TO REDUCE ENERGY

LC-1A
B, G, SF, R, G

LOW POINT

LOW POINT

LOW POINT

LC-9
B, G/W, G, SF, R, G, G/W

LC-8
B, G/W, G, SF, R, G, G/W

HIGH POINT

THIS SECTION OF ROAD
COVERED W/ GRAVEL

HIGH POINT

CORRUGATED DOWN DRAIN W/
"T" DIVERTER AND ROCK OUTFALL

SLOPE COVERED IN WOOD CHIPS/MULCH, W/
WATTLES PLACED EVERY ~10 VERTICAL FEET

LC-11
B, G/W, G, SF, R, G/W, G

LOW POINT

SITE GRADED TO DIRECT RUN OFF TO EDGE OF SLOPE,
SLOPE IS BERMED, RUN OFF DIRECTED TO DOWN DRAINS AND BENCHES,
WATTLES PLACED THROUGHOUT TOP DECK ADJACENT TO BERM AT TOP OF SLOPE.

SOIL STOCKPILES HAVE BEEN TRACK WALKED AND
HAVE BERM AND DITCH AT TOE TO CHANNEL RUN OFF

LC-7
B, G, SF, R, G

LC-6
B, G, SF, R, G

LOW POINT

LC-5
B, G, SF, R, G

BENCH REGRADED W/ DRAINAGE CHANNEL
AND GRAVEL BAGS AS ENERGY DISSIPATERS,
GRAVEL SILT TRAP AT BOTTOM OF BENCH.

LC-12
B, G/W, G, SF, R, G/W, G

LC-13
B, G, SF, R, G

HIGH POINT

LC-14
B, G/W, G, SF, R, G, G/W

COYOTE CREEK

HIGH POINT

CORRUGATED DOWN
DRAIN W/ "T" DIVERTER
THAT FLOWS INTO GRAVEL
SILT TRAP SURROUNDED BY WATTLE
SILT TRAP SURROUNDED  BY WATTLE
INLET PROTECTED BY B, G, SF, R

LC-4
B, G/W, G, SF, R, G, G/W

STAGING AREA

PG&E TOWERS

SELF CONTAINED
LINED COMPOST BASIN

LOW POINT

WOOD CHIPPING/CAD AREA
SURROUNDED BY CONCRETE BLOCKS

DOWN DRAIN INLET
PROTECTED BY SF

DOWN DRAIN INLET
PROTECTED BY B, G, SF, R

SOIL STOCKPILE

LC-2A
B, G/W, G, SF, R, G, G/W

LOW POINT

HIGH POINT

LC-3
B, G, SF, R, G

SILT FENCE AND WATTLES
AT TOE OF SLOPE

LC-3A
B, G/W, G, SF, R, G, G/W

NEWBY ISLAND COMPOST FACILITY

HIGH POINT

LOW POINT

STORM WATER BASIN (RELOCATED)

LC-1
B, G, SF, R, G

HIGH POINT

CORRUGATED DOWN DRAIN W/
"T" DIVERTER AND ROCK OUTFALL

WATTLES ON SLOPE PLACED
EVERY ~5-10 VERTICAL FEET

LC-4A
B, G/W, G, SF, R, G, G/W

PENITENCIA CREEK

COVERED MAINTENANCE BUILDING

NEWBY ISLAND AWS
SANTA CLARA COUNTY

NEWBY ISLAND
RECYCLERY

BIOSWALE

DIXON LANDING ROAD

## GRAPHIC SCALE

250'  0'  125' 250'      500'          1000'

## LEGEND

—50— EXISTING 10 FT CONTOUR

—— EXISTING 2 FT CONTOUR

—— EXISTING PAVED ROAD

—— EXISTING UNPAVED ROAD

● CHECK DAM (CONSTRUCTED ~200', LOCATION
    APPROXIMATE)

——— BROW BERM

——— SILT FENCE

——— DOWN CHUTE

———— STRAW WATTLE

G        FILTREXX PERIMETER CONTROL SOCK

G/W      FILTREXX SOCK W/ METOLOXX ADDITIVE

SF       REINFORCED SILT FENCE

R        ROCKS/COBBLES

## NOTES:
1. EXISTING TOPOGRAPHY BASED ON AERIAL SURVEY BY COOPER
   AERIAL SURVEYS CO. ON JANUARY 28, 2017, UPDATED WITH
   DRONE SURVEY FROM DRONEVIEW TECHNOLOGIES IN OCTOBER 17,
   2017.

Geo-Logic
ASSOCIATES
11415 West Bernardo Court, Ste 200, San Diego, CA 92127
geo-logic.com | 858.451.1136

REPUBLIC
SERVICES

| | DATE OF ISSUE: 10/09/17 |
| DESIGNED BY: – |
| DRAWN BY: CM |
| CHECKED BY: – |
| APPROVED BY: – |

| REV. NO. | DATE | DESCRIPTION | DRAWN BY | DESIGNED BY | CHECKED BY | APPROVED BY |

NEWBY ISLAND LANDFILL
DRAINAGE
IMPROVEMENTS
MILPITAS, CALIFORNIA
BMP MAP

FIGURE NO.
3

PROJECT NO.
S017.1250

This drawing has not been published but rather has been prepared by Geo-Logic Associates, Inc. for use by the client named in the title block, solely in respect of the construction operation,
and maintenance of the facility named in the title block. Geo-Logic Associates, Inc. shall not be liable for the use of this drawing on any other facility or for any other purpose.

**EXHIBIT 2: DRAINAGE IMPROVEMENTS MAP**



GRAPHIC SCALE

LEGEND

— — — — EXISTING 10 FT CONTOUR
— — — — EXISTING 2 FT CONTOUR
— — — — EXISTING PAVED ROAD
— — — — EXISTING UNPAVED ROAD
—×—×— EXISTING FENCE
— — — — EXISTING DRAINAGE
— — — — LANDFILL FOOTPRINT
———— RE-ESTABLISH CHANNEL FOR FLOW AND ADDITIONAL CONTROLS
—·—·— CONSTRUCT BERM AND CHANNEL FOR FLOWS AND ADD CONTROLS
———— EVALUATE IDENTIFIED SECTIONS OF ROAD AND PLACE GRAVEL ON TOP OF EXPOSED SOIL AREAS
———— CONSTRUCT BROW BERM
—×—×— INSTALL SILT FENCE
—·—·— CONSTRUCT DOWN CHUTE

NOTES:

1. EXISTING TOPOGRAPHY BASED ON AERIAL SURVEY BY COOPER AERIAL SURVEYS CO. ON JANUARY 28, 2017.

2. PERMITTED DISCHARGE LOCATIONS WILL BE RENOVATED ON AN ANNUAL OR AS-NEEDED BASIS TO ENSURE EFFECTIVENESS. CONTROLS AT THESE LOCATIONS WILL INCLUDE RIP-RAP ON TOP OF GEOTEXTILE, WADDLES, AND SILT FENCING.

3. SOURCE CONTROL CONTAINMENT WILL BE REEVALUATED AS THE SITE OPERATIONS ARE RELOCATED. SOURCE CONTAINMENT CONTROLS WILL INCLUDE WADDLES, SILT FENCE, PERIMETER BERMS, AND DRAINAGE CHANNELS.

4. DRAINAGE CHANNELS WILL BE THOROUGHLY CLEANED OF SEDIMENT DURING THE DRY SEASON. GRADING WILL BE REESTABLISHED TO PROMOTE DRAINAGE AND CHANNELS WILL BE OUTFITTED WITH CHECK DAMS.

5. RECENTLY DISTURBED AREAS OF THE LANDFILL WILL BE COVERED WITH EROSION CONTROL MATERIALS TO INCLUDE ONE OR MORE OF THE FOLLOW: WOOD CHIPS, COMPOST, AND HYDRO SEED.

LC-1A
LOW POINT
EXISTING DOWN DRAIN
HIGH POINT
LC-11
EXISTING DOWN DRAIN
REGRADE ACCESS ROAD TO PROMOTE DRAINAGE
LC-13
HIGH POINT
LOW POINT
LC-12
LC-2A
LOW POINT
LC-3A
PLACE GROUND COVER FOR EROSION CONTROL
HIGH POINT
LC-4A
REGRADE ACCESS ROAD TO PROMOTE DRAINAGE
LOW POINT

LOW POINT
LC-9
LC-8
HIGH POINT
LOW POINT
LC-7
LC-6
HIGH POINT
LC-4
LOW POINT
HIGH POINT
LC-3
LC-1

Geo-Logic
ASSOCIATES
11415 West Bernardo Court, Ste 200, San Diego, CA 92127
geo-logic.com | 858.451.1136

REPUBLIC
SERVICES

NEWBY ISLAND LANDFILL
DRAINAGE
IMPROVEMENTS
MILPITAS, CALIFORNIA
INDEX MAP

FIGURE NO.
1

PROJECT NO.
AU17.1069

DATE OF ISSUE: 04/20/17
DESIGNED BY: —
DRAWN BY: CM
CHECKED BY: —
APPROVED BY: CM

REV. NO. | DATE | DESCRIPTION | DRAWN BY | DESIGNED BY | CHECKED BY | APPROVED BY

This drawing has not been published but rather has been prepared by Geo-Logic Associates, Inc. for use by the client named in the title block, solely in respect of the construction operation, and maintenance of the facility named in the title block. Geo-Logic Associates, Inc. shall not be liable for the use of this drawing on any other facility or for any other purpose.

ISSUED FOR REVIEW



4" EROSION CONTROL MULCH OR HYDROSEED

SLOPE

4"

2"

30", TYP

2"

**TYPICAL FIBER ROLL DETAIL**

NOTES:
1. NO DAYLIGHT SHOULD BE SEEN UNDER THE WATTLE. PACK SOIL AGAINST THE WATTLE ON THE UPHILL SIDE. WHEN INSTALLING RUNNING LENGTHS OF STRAW WATTLES BUTT THE SECOND WATTLE TIGHTLY AGAINST THE FIRST. DO NOT OVERLAP THE ENDS. STAKE THE STRAW WATTLES TO EACH END AND FOUR FEET ON CENTER.

2. STAKES SHOULD BE DRIVEN THROUGH THE MIDDLE OF THE WATTLE, LEAVING 2-3 INCHES OF THE STAKE PROTRUDING ABOVE THE WATTLE. A HEAVY SEDIMENT LOAD WILL TEND TO PICK THE WATTLE UP AND COULD PULL IT OFF THE STAKES IF THEY ARE DRIVEN DOWN TOO LOW. WHEN INSTALLING WATTLES ON SLOPES, DRIVE THE STAKES PERPENDICULAR TO THE SLOPE.

**DOWN DRAIN DETAIL**

**BROW BERM DETAIL**

2'

2'

2'

1'

18" MIN

SIZE TO FIT DOWNDRAIN

**SECTION**

SIZE TO FIT DOWNDRAIN

**PLAN VIEW**

**DOWN DRAIN ANCHOR DETAIL**

12" MIN

12" MIN

**BERM AND CHANNEL DETAIL**

~2:1

~2:1

FLOW

60°

FLOW

**EXISTING CHANNEL PLAN VIEW WITH ROCK CHECK DAM**

~6"

~18"

2

**EXISTING CHANNEL SECTION VIEW WITH ROCK CHECK DAM**

VARIES

**ACCESS ROAD IMPROVEMENT DETAIL**

DISTANCE(2)

**ROCK CHECK DAM SPACING**

NOTES:
1. DISTANCE SHALL SUCH THAT POINT "A" AND POINT "B" ARE OF EQUAL ELEVATION.

6"

18"

6' MAX

**TYPICAL SILT FENCE DETAIL**

20"

18"

FLOW

6"

5'

**SECTION A-A'**

DATE OF ISSUE: 04/20/17
DESIGNED BY: —
DRAWN BY: CM
CHECKED BY: —
APPROVED BY: CM

Geo-Logic
ASSOCIATES
11415 West Bernardo Court, Ste 200, San Diego, CA 92127
geo-logic.com | 858.451.1136

REPUBLIC
SERVICES

| REV. NO. | DATE | DESCRIPTION | DRAWN BY | DESIGNED BY | CHECKED BY | APPROVED BY |
|---|---|---|---|---|---|---|

NEWBY ISLAND LANDFILL
DRAINAGE IMPROVEMENTS
MILPITAS, CALIFORNIA
DETAILS

FIGURE NO.
**2**

PROJECT NO.
AU17.1069

This drawing has not been published but rather has been prepared by Geo-Logic Associates, Inc. for use by the client named in the title block, solely in respect of the construction operation, and maintenance of the facility named in the title block. Geo-Logic Associates, Inc. shall not be liable for the use of this drawing on any other facility or for any other purpose.

**ISSUED FOR REVIEW**

# EXHIBIT 3: TARGET LEVELS

| PARAMETER | UNITS | TARGET LEVELS | |
| --- | --- | --- | --- |
| | | Annual Average (per discharge point) | Instantaneous Maximum |
| pH | SU | N/A | <6.0 or >9.0 |
| Total Suspended Solids | mg/L | 100 | 400 |
| Chemical Oxygen Demand | mg/L | 120 | N/A |
| Oil and Grease | mg/L | 15 | 25 |
| Aluminum Total | mg/L | 0.75 | N/A |
| Iron Total | mg/L | 1.0 | N/A |
| Lead Total | mg/L | 0.262 | N/A |
| Zinc Total | mg/L | 0.26 | N/A |
| Nitrate + Nitrite as Nitrogen | mg/L | 0.68 | N/A |
| Magnesium | mg/L | 0.064 | N/A |
| Selenium | mg/L | 0.005 | N/A |

NOTES:

1.  Target Levels are equal to the values specified in Table 2 of Industrial General Permit Order 2014-0057-DWQ ("Industrial Stormwater Permit"). If the State Water Quality Control Board or San Francisco Regional Water Quality Board amends the Industrial Stormwater Permit, the Target Levels shall be modified to incorporate the values in any amended Industrial Stormwater Permit upon that permit's effective date.

**EXHIBIT 4: CONTINGENCY PLAN**



September 24, 2017

## Newby Island Organics Pond – Capacity Contingency Plan

The Newby Island Compost Operation is located on the Landfill footprint, west of the operational boundary identified in the Planned Development Permit. An engineered pad comprised of multiple all-weather enforcement layers, supports the compost activities. The pad is separated from the landfill operation due to the elevated working surface and self contained drainage features, which prevent runon or runoff. All of the water that is used during the production of compost or rain water that contacts any area within the engineered pad is captured and conveyed to a synthetically lined, segregated, retention pond. Depending on the seasonal conditions and operational needs, the water retained in the pond is either recirculated to support the operation or hauled to a waste water treatmet facility for disposal.

In order to maintain an operational efficiency, and promote decomposition of the feedstock, the compost operation requires a specific volume of water. The water used to support the operation is drawn from the segregated retention pond. To ensure the appropriate factor of safety is maintained and the pond does not overflow, a minimum freeboard is kept. The seasonal fluctuations dictate how the water level in the pond is maintained. During warmer months, the water level in the pond is typically replenished by the ground water well on site to satisfy the water demand of the operation. Conversely, if the operation does not require as much operational water to sustain optimal conditions, the water volume may need to be managed by disposal.

Should conditions necessitate that the water level in the pond be reduced to maintain safety or overflow conditions, the pond water level will be reduced by pumping and hauling excess water to the waste water treatment plant.